SOLOMAN HENRY v. THE STATE.

No. 5815.   Decided May 19, 1920.

1.—Assault to Murder—Accomplice—Charge of Court—Conspiracy.

Where, upon trial of assault with intent to murder, the evidence did not raise the issue of accomplice with reference to the testimony of Hettie Glass, it was reversible error for the court to charge on accomplice's testimony, there being no evidence of conspiracy between said witness and defendant.

2.—Same—Circumstantial Evidence—Charge of Court.

Where upon trial of assault to murder, the only direct testimony was such as was not to be taken seriously, and the case was not taken out of the rule of circumstantial evidence thereby, the court should have submitted a charge on circumstantial evidence.  Following Kelley v. State, 86 Texas Crim. Rep., 281.

3.—Same—Evidence—Declarations of Third Party.

The statement of Hettie Glass, that she advised or suggested to her husband, the injured party, not to leave home that night, etc., was not admissible, as it showed no conspiracy between herself and the defendant.

4.—Same—Argument of Counsel—Practice on Appeal.

Where the judgment was reversed and the cause remanded upon other grounds, an exception to the remarks of State's counsel need not be considered.

5.—Same—Declarations of Third Party—Evidence.

The statements of witnesses and their remarks to the defendant after they had carried the injured party to the hospital, to the effect that if he would wait a while they would get gasoline for his car, etc., did not show any intention of flight on part of the defendant and was immaterial from any viewpoint.

6.—Same—Evidencce—Supporting Testimony.

Where the testimony of the injured party was contradicted by testimony of the defense, there was no error in admitting corroborative statements of the said witness.

Appeal from the District Court of Bowie.   Tried below before the Honorable P. A. Turner.

Appeal from a conviction of assault with intent to murder. Penalty: ten years imprisonment in the penitentiary.

The opinion states the case.

*Mahaffey, Keeney & Dalby*, for appellant.—On question of declarations of third party after homicide: Carter v. State, 183 S. W. Rep., 881; Hollingsworth v. State, 189 id., 488.

On question of circumstantial evidence: Beason v. State, 67 S. W. Rep., 98; Early v. State, 50 Texas Crim. Rep., 344; Huddleston v. State, 156 S. W. Rep., 1168.

On question of accomplice's testimony: Johnson v. State, 54 Texas Crim. Rep., 616; Long v. State, 62 Texas Crim. Rep., 540.

*Alvin M. Owsley*, Assistant Attorney General, for the State.—On question of circumstantial evidence: Egbert v. State, 176 S. W. Rep., 561; Dobbs v. State, 51 Texas Crim. Rep., 629; Herrera v. State, 170 S. W. Rep., 719.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of assault to murder and allotted a term of ten years in the penitentiary.

Glass was a tenant and living upon the farm of appellant. They had been friends. Appellant had furnished Glass money and provisions. The money was loaned without interest. Glass testified, as did appellant, to these facts. This evidence is uncontroverted. Glass' wife was many years older than Glass. With them was living Ophelia Marshall, a grand-daughter of Glass' wife by whom Glass states he had several illegitimate children. She denied that Glass was the father of her children. She had been living in the house with Glass and his wife since childhood. During the day preceding the shooting at night Glass and Ophelia Marshall went to Texarkana about six miles distant. Returning they reached a gate. Ophelia Marshall got out of the buggy to open it. At this gate was a bridge across a stream. Just as she alighted from the buggy and had taken two or three steps a gun fired diagonally from the rear striking Glass in the right arm. Glass testified that he was not anticipating trouble. After the shot was fired he looked around and saw in the weeds some distance away a party he recognized by the flash of the gun as being appellant. The distance between the buggy and where the party who fired the shot was variously estimated at from thirty feet to thirty or forty yards. There was a white man on the bridge a few steps away. He was at the bayou on a fishing excursion. There was another party in a boat, a short distance down the bayou who was also engaged in fishing. On the bridge was the witness Elliott who was driving a double team. The bridge was estimated to be something like one hundred to one

hundred and twenty-five feet in length. Elliott saw the flash of the gun. No witness recognized the party shooting except Glass. He states he looked around after he had received the wound and recognized the face of the defendant. Where the party who did the shooting stood there was a heavy growth of weeds estimated as being about the height of a man's head. About twenty-five to thirty minutes after the shooting appellant came to the scene of the trouble and made inquiry as to who was shot. When he reached the point he ascertained that Glass had been shot. In the mean-time Glass had been carried from the place where he was shot to a near by house. Glass was carried in an auto to Texarkana and placed in a hospital. Appellant accompanied them and became responsible to the surgeon in charge of the hospital for attention and services to Glass. A witness· for the State testified that when appellant came he showed evidence of having come in a hurry. Appellant showed by his testimony that at the time the shot was fired he was at home managing a kiln in which he burned charcoal, and had been at work at it for some hours. This is shown by the testimony of himself and wife. Upon hearing a woman scream appellant remarked to his wife that he would go to the place to see what was the matter. She urged him not to do so, that it was night and he did not know what would happen or might occur, and advised him to stay at home, but he went and found Glass shot and went with him to the hospital, and employed the services of the surgeon there, and contracted to pay the expenses incident to Glass' treatment.

The State seems to have had two theories with reference to this shooting: one that appellant and Glass' wife were criminally connected with it, and, second, that appellant shot Glass with a view of obtaining the person of Ophelia Marshall as a mistress. Glass and his wife were not happily situated in their marital relations. Ophelia Marshall testified that she was present at the time of the shooting; that she did not recognize the assailant; that she had been practically raised by Glass and his wife, and was the grand-daughter of Glass' wife, and that she had illegitimate children; that they were not the offsprings of Glass but of two other named parties. She denied that appellant ever at any time sought to have intercourse with her, or ever mentioned such matter to her. She was used by the State as a witness. Appellant denied seeking to make Ohpelia Marshall his mistress, or that it ever occurred to him so to do. Ophelia Marshall testified that appellant's wife was a "young buxom woman" and that she did not know whether appellant thought she was prettier than his wife or not. The parties are all negroes. However, Ophelia Marshall did testify that appellant had told her that Glass "was sickly and no account" and if she wanted to remain on his premises he would build her a house. This was controverted by the appellant. It is also in evidence that Hettie Glass, the wife of A. Glass, was

away from home a great deal. On the day that he and Ophelia Marshall went to Texarkana preceding the trouble at night, his wife suggested to him he ought not to go, that one of her former husbands had gone away from home and dropped dead; that her son, the father of Ophelia Marshall, had also died after leaving home from a hemorrhage, and, therefore, she suggested to her husband that he had better not go from home; that he might be "sent down," and might not come home alive. The night following this conversation Glass was shot. The officers made a search for facts and circumstances by which they might fasten criminality. They went to appellant's residence and found his gun. It had not been fired recently. They went to the residence of Glass where his wife and a boy were staying, and found a shot gun which had been freshly discharged. When the officers called for the gun Hettie Glass ordered the boy to hide it. The officers found it had been freshly discharged. She testified she did not know how it became discharged. The facts show that appellant lived something like a quarter of a mile from where the shooting occurred and that Hettie Glass lived a little beyond and farther from the place of the shooting.

The court charged the jury with reference to the testimony of Hettie Glass as being an accomplice, she being used as a witness by the State. Objection was urged to this charge on the ground that the testimony did not show such relation between appellant and Hettie Glass. We are of opinion this contention is correct. We have stated practically the testimony that would indicate the relation of Hettie Glass and appellant to this transaction. We fail to find any evidence of conspiracy between them, and if such relation can be deduced it is from the statement of Glass that he recognized defendant as the man who shot, and that a gun recently discharged was found at Hettie Glass' residence. Hettie Glass denied knowing that her gun had been taken away from her house; that she herself did not use it. There must be some evidence connecting the parties in a criminal way to make one an accomplice to the other when used as a witness. Appellant's testimony excludes the idea not only of his being connected with Hettie Glass in the matter, but his presence at the time and place of the shooting. He proved an *alibi*. The only recognition or identification of appellant was by Glass, and we deem it unnecessary to discuss the recognition of a party at night under such circumstances.

This brings also the question raised by appellant that he was entitled to a charge on circumstantial evidence. Omitting the testimony of Glass, this would be conceded to be a correct contention. If this case is taken out of the rule of circumstantial evidence, it is by the statement of Glass that after the gun was fired and he had been shot, he turned, looked and recognized defendant's face by the flash of the gun. This character of testimony is not to be taken seriously.

We are of opinion that this is a case of circumstantial evidence. See Kelly v. State, 86 Texas Crim. Rep., 281, 216 S. W. Rep., 188, and a number of other cases to the same effect. We are of opinion the court erred, therefore, in charging the jury with reference to accomplice testimony, and failing to charge upon circumstantial evidence.

The statement of Hettie Glass that she advised or suggested to her husband not to leave home that night, that her former husband had dropped dead while away from home, and that her son also had died suddenly from a hemorrhage while from home, was not admissible. It did not show a conspiracy, or tend to show a conspiracy, nor was it a statement made in furtherance of a design to injure Glass. Appellant was not mentioned in connection with it. It was a matter occurring between herself and husband, anticipating that he might not come back alive, but it did not point out or indicate that defendant was going to kill him. It in nowise referred to defendant. This testimony was not admissible.

There is a bill of exceptions to some remarks made by the district attorney while upon the stand as a witness. Upon objection the bill would indicate perhaps this was withdrawn. It is unnecessary to discuss it. It will not occur upon another trial.

There are several bills of exceptions reserved to statements of witnesses and their remarks to appellant after they had carried Glass to the hospital in Texarkana. The substance of these statements is that after they had reached the hospital and had been there for some time one of the witnesses remarked to defendant that if he would wait a while that witness would secure gasoline for the purpose of running his car. This man was one of the fishermen who was camped at the bayou where the shooting occurred. He stated to appellant that if he could wait until he secured the gasoline he could take him back in the car. In this connection there is testimony of another witness who suggested to appellant that he had better stay at the hospital. This appellant did not do but returned home. Various objections were urged to this testimony. This was not legitimate evidence to show flight. This was not material from any viewpoint.

Appellant suggests in another bill of exceptions that the court erred in admitting a corroborating statement of Glass. When Glass reached the hospital on the night of the shooting he made a statement to the surgeon in charge, Dr. Towles, that he did not know who fired the shot that struck him. Subsequently he made other statements to the same effect. The State then proved that he made subsequent statements that appellant shot him. This underwent a pretty thorough investigation in the recent unpublished opinion on rehearing in Elbert Taylor v. State, and it was there held that such statements under the circumstances here stated might be introduced. We are of opinion that this question is brought within the rule there announced.

There are other matters mentioned in bills of exception which we deem unnecessary to discuss.

For the reasons indicated this judgment will be reversed and the cause remanded.

*Reversed and remanded.*