JOHN FLEWELLEN v. THE STATE.

No. 12705. Delivered June 26, 1929.

The opinion states the case.

*S. M. Burns* and *Roy Boskin* of Cameron for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment confinement in the penitentiary for eighteen years.

The parties involved are negroes. Deceased, Charlie Harris, lived alone. Sylvia Davis was his paramour and at times visited deceased in his home. On the occasion of the homicide, according to state's witness, Sylvia Davis, deceased was lying on a mattress on his front porch. The witness was sitting on the edge of the porch near him. Deceased had on nothing but an undershirt, the time being between eight and nine o'clock at night. The witness saw someone come through the front gate and go around deceased's home. She told deceased to get up, as someone was coming, but deceased declined to move. She said that the party who came through the gate appeared in the front door, having come through the house from the rear; that prior to lying down deceased had placed an axe against the wall on the front porch; that she recognized the appellant as being the party who had come through the gate and that appellant had his hand behind him; that appellant had threatened to kill deceased and that being afraid she ran away; that after having gone a short distance she heard someone holler twice. Deceased staggered over to a neighbor's house. He had a terrible gash in his head which appeared to have been inflicted with an axe. He was unable to give any explanation of his condition. A bloody axe was found on deceased's porch. There was also blood on the floor and wall. Having been taken to a hospital he died in a day or two.

On the morning after the infliction of the fatal wound upon deceased, the witness Sylvia Davis stated to the sheriff that she had heard that a Mexican was the guilty party and that she believed such to be the fact. She made this statement to others. She admitted upon the trial that she had made the statement in question to the sheriff. Later, upon being questioned in the jail where she had been taken by the sheriff, the witness advised the sheriff that appellant was deceased's assailant.

The state's testimony was to the further effect that deceased and appellant had had a previous difficulty over appellant's attentions to

Sylvia Davis, and that appellant had threatened to kill deceased. It was the theory of the state, given some support in the testimony, that appellant desired the exclusive possession of Sylvia Davis and that in the hope of making her his paramour he took the life of deceased. Several state's witnesses testified to statements made by appellant after the wounding of deceased to the effect that he, appellant, could not be charged with the offense because of the fact that he was in his home at the time of its commission. These witnesses said that appellant made these statements before he had been accused of having any connection with the homicide. Appellant denied his presence at the scene of the homicide and declared that he was at home in bed at the time. He testified that Sylvia Davis had granted him carnal favors; that she had expressed the desire of leaving deceased and had declared that deceased had mistreated her; that she said that the only way she could get rid of deceased was to kill him; that she was going to "love him up" some night and kill him.

In an effort to rebut appellant's testimony to the effect that he was at another and different place when the offense was committed, the state offered witnesses who testified that they saw appellant on the road in the vicinity of the home of deceased prior to the homicide and that two or three hours after the homicide they saw appellant at a point not far removed from the scene of the homicide walking along a road.

In his motion for a new trial appellant set up the fact that he had discovered new evidence and appended to the motion the affidavit of the witness wherein it was stated that approximately two weeks prior to the homicide Sylvia Davis had shown the witness some bruises on her body which she said deceased had inflicted. The witness stated in the affidavit that Sylvia Davis said at the time that she was unable to get rid of deceased and that she was going to kill him. The testimony in question was material and competent. The state relied upon circumstantial evidence. The court submitted the question of Sylvia Davis being an accomplice to the jury. She was admittedly in close proximity to the homicide. According to appellant's statement she had expressed the desire to rid herself of deceased. She had admittedly told the sheriff when first questioned that she had heard that a Mexican killed deceased, and that she believed that such was a fact. No person other than this witness testified to having seen appellant at the place where the homicide was committed. Aside from her testimony there is little evidence in the record tending to connect appellant with the commission of the

offense. The sufficiency of the corroborative evidence is gravely doubted. Appellant testified to an alibi for himself. His theory was that the witness Sylvia Davis was probably deceased's assailant, and that he had nothing to do with the transaction. That the threats the newly discovered witness will testify to are admissible as original evidence to support this theory is clear. We have no doubt as to its materiality. In a case of circumstantial evidence, every reasonable hypothesis should be explored, and evidence which tends to show that another and not the accused committed the offense, or which may create in the minds of the jury a reasonable doubt as to the identity of the slayer, should not be rejected unless it is remote to a degree that it is of no weight. Wilkes v. State, 280 S. W. 786; Kelly v. State, 216 S. W. 188. In his Annotated Penal Code of Texas, Section 192, Mr. Branch states the rule relating to newly discovered evidence as follows:

"To warrant a new trial on the ground that new testimony has been discovered since the trial it is incumbent on defendant to satisfy the court that the new testimony has come to his knowledge since the trial and that it was not known beforehand, and it must be such as reasonable diligence could not have secured at the former trial; it must be competent, material to the issue, and probably true, going to the merits and not merely cumulative or collateral nor merely to impeach a former witness; and it must appear that it is reasonably probable that it will change the result."

It is apparent from the testimony heard by the court that the new testimony came to the knowledge of appellant and his attorneys since the trial, that it was not known beforehand, and that it was such that reasonable diligence could not have secured it at the trial. No witness testified on the trial to the same facts the newly discovered witness states that she will testify to. In every respect the newly discovered evidence is clearly within the rule above quoted. We are unable to say that it is not reasonably probable that it will change the result if heard by a jury upon another trial. It follows that we are of the opinion that the motion for new trial should have been granted.

For the error discussed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.