### T. T. KELLEY v. THE STATE.

#### No. 5383. Decided November 26, 1919.

1.—Arson—Evidence—Imputing Crime to Another—Newly Discovered Evidence.

Where, upon trial of arson, defendant in a motion for new trial produced affidavits of two witnesses showing newly discovered evidence, and placing the accomplice and unknown companions in proximity to the destroyed property under suspicious circumstances a short time before the fires were lit, and showed that defendant was in his dwelling out of sight of, and some distance from, the locality of the accomplice and his companion at the time, and the record on appeal further showed that outside of the testimony of this accomplice the evidence was entirely circumstantial, a new trial should have been granted. Following: DuBose v. State, 10 Texas Crim. App., 230, and other cases.

2.—Same—Argument of Counsel—Traveling Outside of Record.

Where State's counsel, in closing the argument, stated to the jury in substance that just before the fire the lumber market was bad and that the jury well knew of a great many big stacks of lumber around in the vicinity at different places which could not be sold, and there was no such evidence introduced, the omission could not be lawfully supplied by the unsworn statement of counsel for the State, and the same was reversible error.

Appeal from the District Court of Liberty. Tried below before the Hon. J. Llewellyn, judge.

Appeal from a conviction of arson; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*E. B. Pickett, Jr.,* for appellant.—On question of newly discovered evidence: West v. State, 2 Texas Crim. App., 209; Lyndley v. State, 77 Texas Crim. Rep., 287; Weaver v. State, 52 Texas Crim. Rep., 11, 105 S. W. Rep., 189; Piper v. State, 57 Texas Crim. Rep., 605, 124 S. W. Rep., 661; Leonard v. State, 79 Texas Crim. Rep., 271, 184 S. W. Rep., 225; Spencer v. State, 69 Texas Crim Rep., 92, 153 S. W. Rep., 858; Hargrove v. State, 81 Texas Crim. Rep., 407, 195 S. W. Rep., 855.

On question of argument of counsel: Hunnicutt v. State, 18 Texas Crim. App., 498; Johnson v. State, 66 Texas Crim. Rep., 586, 148

S. W. Rep., 328; Bradley v. State, 72 Texas Crim. Rep., 287, 162 S. W. Rep., 515; Gusman v. State, 72 Texas Crim. Rep., 258, 171 S. W. Rep., 770; Lynch v. State, 81 Texas Crim. Rep., 64, 193 S. W. Rep., 667; Wilson v. State, 81 Texas Crim. Rep., 216, 194 S. W. Rep., 828; Canon v. State, 208 S. W. Rep., 660

*E. A. Berry*, Assistant Attorney General, for the State. On question of newly discovered evidence: Lewis v. State, 15 Texas Crim. App., 647; Cole v. State, 16 id., 461; Jones v. State, 23 id., 501; McVey v. State, 23 id., 659; Burns v. State, 12 id., 269.

MORROW, Judge.—The conviction is for arson. The appellant was under contract to supply a company in France with a large number of railroad ties, and near his sawmill there were situated about 10,000 of these ties, and these, together with about 100,000 feet of lumber belonging to the appellant were destroyed by fire on the night of December 1, 1917. The house in which the appellant and his employee Barrett lived, the ties covering about a third of an acre of land, the mill, the lumber pile, and a commissary or cookshack occupied by one LeBlanc—another employee— were situated near a public road in a thickly timbered country and were situated from 50 to 250 feet apart. The ties and the lumber were insured, and the interest of the French Company by reason of its advancement upon the ties was protected in the policies. The incidents attending the fire are testified to by the appellant and his two employees and by four apparently disinterested witnesses, consisting of two separate parties who came out from Houston in automobiles for the purpose of hunting squirrels. Two of these hunters, used as witnesses for the State, claimed to have arrived on the scene at about 1:30 at night; to have observed at that time that the ties were burning in a number of places, to have observed sticks of kindling and signs of the use of coal oil in setting them afire. They talked to the appellant, and drew the inference from his manner and conversation that he felt no interest in preventing the destruction of the ties, the lumber at that time not having taken fire. Their suspicions were aroused, and after leaving the scene they, according to their testimony, returned and observed that the lumber, which was some 400 feet distant from the ties, had caught fire. They observed a person whom they identified as appellant near the lumber pile stooping down at the corner of the pile of lumber working with the fire. He was some seventy-five yards distant, and was apparently putting some kindling under the edge of the lumber. Later they saw a person, whom they identified as Barrett, coming from the direction of the mill, which was between the lumber and the ties, and joined the appellant; that Barrett dashed something on the fire which was followed by a brilliant blaze. They afterwards saw a man dressed like the appellant, and

whom they took to be he, in the tie field. They also saw a third party, whom they identified as LeBlanc.

LeBlanc, who occupied the commissary situated about six or seven hundred feet from and around a bend in the road out of view of appellant's house, testified that he had on the previous day seen kindling about the ties; that he knew nothing of the fire until about 4 o'clock in the morning when he was aroused by appellant, who came to his shack seeking some breakfast; and that after arousing the witness, the appellant threw some oil on a part of the lumber which was not burning, and put a match to it, though whether he lit the fire is not stated.

The appellant testified that he retired between 8 and 9 o'clock, and slept until about 11 o'clock, when he went out of his house to attend a call of nature, and discovered the fire; that he aroused Barrett at once, and that the two of them worked with the fire; that the ties were heavy and difficult to handle, and the water supply meagre, but that they used their best efforts to prevent the destruction of the property. The other party of hunters claimed to have arrived between 12 and 1 o'clock and found the appellant and Barrett engaged in throwing water on the ties, getting the water from the boiler at the mill and packing it in buckets; that the witnesses took part, and that the sparks were flying on to the mill, and the effort to save the ties seeming futile they turned their attention to preventing the destruction of the mill; that the appellant appeared to be exhausted by his efforts; that the fire obstructed the road to the place they expected to hunt, and they spent the remainder of the night in the house with appellant and Barrett; that when the car occupied by the other party of hunters arrived, the appellant went out of the house and talked a short time, and returned, remaining the balance of the night.

The appellant, in a motion for a new trial, produced affidavits of two witnesses, farmers residing in the community, who declared that they passed the premises early in the night on which the fire occurred, driving their teams along the road, first passing the house which appellant occupied, and saw and recognized him there reading a newspaper; that on reaching the commissary they discovered three men, who, on the approach of the witnesses, disappeared, but one of them they recognized as LeBlanc. This evidence was newly discovered, and it is affirmatively shown that it was considered by the court in passing upon the motion, which was not controverted and upon which there was no evidence introduced by the State. We are aware of nothing in the record which would justify the conclusions that the statements of these witnesses were untrue. Admittedly the fire had made much progress before it was discovered by the witnesses for either the State or the appellant. The State, in opening its case, introduced appellant's statement that he first discovered the fire at about 11 o'clock, he having been asleep at the time it took fire. The State relies upon the inferences

to be drawn from the facts that were developed to show that the appellant started the fire, and the facts testified to by the witnesses who claimed to have watched the premises after arriving from Houston, and circumstances from which they drew the conclusion that appellant was engaged in augmenting the fire which was burning the lumber. There was much testimony tending to show that by reason of the dense undergrowth the recognition of the appellant or the observation of appellant by these witnesses while they claimed to have been watching was impossible. A well-known rule often applied in this State, permits one accused of crime, where circumstantial evidence is relied upon to prove his guilt, to introduce evidence tending to show that another having motive to commit the offense was in such proximity to it that he might have been its author. DuBose v. State, 10 Texas Crim. App., 230; Taylor v. State, 81 Texas Crim. Rep., 359, 195 S. W. Rep., 1147. The State used the witness LeBlanc, and the court instructed the jury that he was an accomplice. The newly discovered evidence, put him and unknown companions in proximity to the destroyed property under suspicious circumstances a short time before the fires were lit, and at a time when—according to this new evidence—the appellant was in his dwelling out of sight of and some distance from the locality of LeBlanc and his companions. Recalling that LeBlanc admittedly upon some motive was one of the incendiaries, the new evidence, putting him and companions whose identity was not disclosed upon the trial in proximity to the crime both in time and locality, was such, we think, as might have been regarded by the jury as important in accounting for the fire in a manner consistent with the innocence of the appellant. Particularly is this true in view of the marked conflict in the evidence given by the witnesses for the State and the defendant, who, so far as the record shows, were not in any way interested in the result of the trial.

In closing the argument of the case, one of the attorneys for the State stated to the jury in substance that just before the fire "the lumber market was bad; and that they (the jury) knew of a great many big stacks of lumber around in the vicinity at different places that could not be sold." The bill of exceptions reserved to this argument, and the refusal of the court at the time to admonish the jury, shows affirmatively that there was no evidence admitted or offered showing or tending to show that the lumber market was bad at the time stated, or at any time, nor that there were any piles of old lumber in the vicinity which could not be sold. The statement of the attorney for the State in his argument appears, therefore, to have been the only evidence before the jury going to show that the appellant had aught to gain by setting fire to his lumber. The evidence connecting the appellant with the offense, as stated is very conflicting, and the importance of showing a motive for the offense was extreme. That he desired to collect the insurance that covered the ties furnished the motive is by no means obvious,

for the reason that it is difficult to point to any evidence showing that the appellant would have profited by collecting the insurance on the ties instead of collecting their contract price. While he had no contract to sell the lumber, there was evidence introduced that it had a fixed price and that it was marketable. The State might have met this issue by the introduction of evidence before the jury upon the trial of the case, because if untrue it would have tended to support the State's theory that appellant would profit by obtaining the insurance money on the lumber. No such evidence having been introduced by the State, the omission could not lawfully be supplied by the unsworn statement of the attorney for the State. The statement was calculated to have a potent effect on the jury. To what extent it is reflected in their verdict we are not able to determine. That it was an infringement of the rights of the appellant is clear.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*