Bonnie Burnette ERWIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 69465.

Court of Criminal Appeals of Texas,
En Banc.

April 1, 1987.

Louis B. Gohmert, Jr., Tyler, for appellant.

Jack Skeen, Jr., Dist. Atty., and Ann M. Monaco, Asst. Dist. Atty., Tyler, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

MILLER, Judge.

Appellant was convicted of capital murder. V.T.C.A.Penal Code, § 19.03. The death penalty was imposed after the jury answered affirmatively the special issues submitted under Art. 37.071, V.A.C.C.P. Appellant brings sixteen points of error. We will reverse.

In his second and third points of error, appellant contends that the trial court erred by failing to grant a directed verdict because there was insufficient evidence to corroborate accomplice witness Leonard Hawkins' testimony. In order to address these grounds, a recitation of the relevant facts is necessary.

Hawkins testified that two days before Thanksgiving, 1982, Patrick Brooks, the deceased, broke into appellant's brother's home and stole approximately $3,500.00 in cash and some "pills." He took the stolen property to Leonard Hawkins' house and gave part of it to Stevie McGee. Later that evening, Hawkins went with appellant and the deceased to appellant's house where appellant struck the deceased a number of times with his pistol.

Appellant then hog-tied the deceased with a telephone cord and tape. Hawkins got into the car, backed it into the driveway, and under appellant's direction, helped load the deceased into the trunk. They pulled the car into the next door garage and left it there for a number of hours.

While the car was in the garage, appellant and Hawkins went and got McGee, who had supposedly been with the deceased when the money and drugs were stolen. McGee stated that he had received part of the stolen property from the deceased. The deceased was brought back from the trunk, placed on the kitchen floor, and appellant doused him with gasoline. Appellant then dropped lighted matches on top of the deceased. The matches did not ignite the gasoline since the deceased's clothes were wet at the time. They left the deceased in the kitchen and went into another room to watch television. Later, Don Erwin, appellant's brother, arrived at the house. On several occasions, appellant went back to the kitchen to kick the deceased and demand that the stolen items be returned.

Ultimately, the deceased was untied and his injuries were cleaned and bandaged. The money and the pills were recovered. Don Erwin, the deceased, and a few other people drove to Tyler. Thirty minutes later, Hawkins and appellant drove back to Tyler and ate. Hawkins went alone to Don Erwin's house where the deceased was lying on the bed. There were bars on the windows and a dead bolt lock on the door. Don Erwin left with Hawkins and the deceased.

They drove to Don Erwin's mother's home which was unoccupied. Hawkins and the deceased, who was unrestrained, stayed there for two and one-half hours until 4:00 or 5:00 a.m. The location was two blocks from the deceased's house. Finally, appellant drove up and the others followed him to his house in Tyler.

There, appellant got into the back seat of the two-door Regal behind the deceased and Hawkins drove them to some land appellant had leased to grow watermelons. Appellant got out of the car and went into a mobile home located on the lot. He returned shortly thereafter with a burlap rope and got in the seat behind the deceased. Appellant then placed the rope around the deceased's neck and choked him for ten to fifteen minutes. Afterward, appellant dragged the deceased between two

mounds of dirt. The deceased was still breathing at the time. Appellant then got a "sharpshooter" shovel and beat the deceased in the head eight or ten times.

 With these facts in mind, we may address appellant's contentions. Evidence which corroborates the testimony of accomplice witness Hawkins need not directly link the accused to the crime or be sufficient in itself to establish guilt. *Killough v. State*, 718 S.W.2d 708 (Tex.Cr.App.1986) at 710, citing *Thompson v. State*, 691 S.W.2d 627, 631 (Tex.Cr.App.1984) and *Brown v. State*, 672 S.W.2d 487 (Tex.Cr.App.1984). In determining the sufficiency of corroboration evidence, we must eliminate from consideration the testimony of accomplice witness Hawkins and then examine the testimony of other witnesses to ascertain whether there is evidence which tends to connect the defendant with commission of the offense. *Killough*, supra, citing *Cruz v. State*, 690 S.W.2d 246, 250 (Tex.Cr.App.1985).

In the case before us, the State introduced the testimony of Frankie Mae Reese, who testified regarding some of the activities which took place in Dallas. She stated that she was at appellant's house around Thanksgiving of 1982. Appellant was upset with the deceased for stealing drugs and money from appellant. Appellant asked her to go into another room, and she complied. She heard talking and fighting in the next room. She heard appellant tell someone, who she assumed was the deceased, "Don't move." Earlier that night, she had heard Hawkins say that appellant was "going to whoop" the deceased. Reese also stated that appellant told another woman in the house to go in the bedroom and clean up what Reese later found out was the deceased's blood.

Later that night, Reese was sleeping and was awakened by appellant, who told her to go into the kitchen. When she got there she saw the deceased, lying on the floor. His head and mouth were bleeding and his hands and feet were tied behind his back. Appellant directed Reese's attention to a pistol and told her to shoot the deceased if he tried to get away. Reese stated that

she did not assist the deceased for fear of what appellant would do to her. She added that it would not have helped to untie him because they were both locked inside the house.

Sometime later, appellant returned, gave the other woman in the house some money and told her to go buy some gasoline. When she returned with the gasoline, appellant went into the kitchen. Later, Hawkins and appellant put the deceased in a car trunk. They later brought the deceased back into the house. The deceased was untied, and limped when he walked. Appellant pointed a pistol at the deceased and they left.

Stevie Lee McGee was the next witness called by the State. He stated that he sold drugs for appellant's brother. Near Thanksgiving of 1982, McGee went to a' house that belonged to appellant's brother. McGee testified that he was with the deceased when the deceased stole money and drugs belonging to appellant. Sometime later, McGee went to appellant's house. McGee was asked about the burglary. He saw the deceased who was hog-tied. McGee contacted a friend who brought the stolen property to appellant's house. Appellant threatened to kill the deceased. McGee saw appellant pour the gasoline on the deceased and drop lighted matches on him. McGee never saw the deceased again.

The next witness called by the State was Leonard Johnson. He had been hired by appellant to put in a swimming pool in Tyler. He stated that appellant told him to dig a hole in the watermelon patch, for sewage disposal, and Johnson complied. After the hole was dug, Johnson returned the next day, and found that it had been filled in. The deceased's body was later found in the hole.

Next, the State called Joe Dillman, a detective for the Tyler Police Department.

He testified that the deceased's body as well as a wallet and syringe were found on the tract of land leased by appellant.

We find that in the instant case there is sufficient evidence tending to connect appellant to the kidnapping and murder. Appellant tied the deceased up, beat him, poured gasoline on him, and threatened to kill him. After appellant and the deceased left for Tyler, no one ever saw the deceased alive again. His body was found on appellant's land, buried in a hole that was dug out on appellant's orders one day before it was filled (with the deceased's body). Although this evidence would not be sufficient to find appellant guilty of the offense, it is sufficient to corroborate accomplice Hawkins' testimony. See *Brown v. State*, 672 S.W.2d 487 (Tex.Cr.App.1984), and *Mitchell v. State*, 650 S.W.2d 801 (Tex. Cr.App.1983), *cert. denied*, 465 U.S. 1074, 104 S.Ct. 1431, 79 L.Ed.2d 755 (1984). Cf. *Cruz*, supra. Appellant's second and third points of error are overruled.

In his fourth point of error, appellant contends that the trial court erred in refusing to issue a writ of attachment for Cathy Callier, a witness who had been subpoenaed by the State. The State's subpoena had been executed and return of service made on February 14, 1985. On March 20, 1985, during the trial of this case, appellant filed a subpoena for Callier. This subpoena was not served. On the same day that appellant filed his subpoena, counsel for appellant telephoned Callier and told her she must appear in court the next day because she had been subpoenaed. When Callier did not appear the next day appellant informed the court that the State had subpoenaed the witness and requested a writ of attachment. The trial court stated, erroneously, that there was no return of service on Callier and that the court would not delay the trial any further.[1] (The

---

1. Relevant testimony concerning the return of service on Callier follows:

"MR. HAAS [Defense Counsel]: Judge, at this time, the Defense would like to call Kathy Callier. I don't believe she's in the Court-house. We would request the Court to issue a Writ of Attachment. It's my understanding, or from looking at the Court file, that the

witness had been subpoenaed and had—had been subpoenaed by the State and had failed to show.

"THE COURT: Mr. Haas, the file does not reflect any return of service upon the witness Callier. The Court has given you a full day to procure the presence of the witness. It's my

record shows, however, that there was a proper return of service on Callier filed by the District Clerk over one month earlier.) The trial judge then denied the request for a writ of attachment. The defense rested.

Appellant then made a bill of exceptions, summarizing for the court what Callier would have testified to if her presence had been compelled. Callier was expected to testify that Leonard Hawkins, called earlier as a witness for the State, admitted to killing the victim himself. The trial court added to the bill of exceptions that there was no reasonable expectation of locating and procuring the witness' presence by attachment without unduly delaying the trial.

Article 24.12, V.A.C.C.P., provides for witness attachment and states:

When a witness who resides in the county of the prosecution has been duly served with a subpoena to appear and testify in any criminal action or proceeding fails to so appear, the State or the defendant *shall be entitled* to have an attachment issued forthwith for such witness. (Emphasis added)

The public policy behind this article is based on the constitutional guarantee of compulsory process contained in the Sixth Amendment of the U.S. Constitution and applicable to the states through the Fourteenth Amendment. *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Article I, sec. 10 of the Texas Constitution also provides such a guarantee: "In all criminal prosecutions the accused

shall ... have compulsory process for obtaining witnesses in his favor, ..."

So deep rooted is the right of compulsory process that this Court has observed that judges have the *inherent* power to issue compulsory process, notwithstanding either the absence of statutory authority or the presence of statutory prohibition, when necessary to protect the rights guaranteed under Tex. Const. art. I, § 10. *Bludworth v. State,* 168 Tex.Cr.R. 549, 330 S.W.2d 436 (1959). Thus, a defendant is entitled to an attachment as a matter of right.[2] See generally 24 Tex. Jur.3d *Criminal Law* §§ 3172, 3173 (1982) and 61 Tex.Jur.2d *Witnesses* § 3 (1964).

Returning to appellant's allegation that the trial court erred in refusing to issue a writ of attachment for Callier, according to Art. 24.03, V.A.C.C.P., a subpoena filed by the State inures also to the benefit of the defendant. *Denney v. State,* 558 S.W.2d 467, 470 (Tex.Cr.App.1977), *cert. denied,* 437 U.S. 911, 98 S.Ct. 3104, 57 L.Ed.2d 1142 (1978). Once the State has a subpoena served, Art. 24.03, supra, precludes the defendant from serving the same witness. When the State subpoenas a witness that the defendant wishes to call, the defendant has no choice but to rely on the State's subpoena. If a witness is served and fails to appear, either side is entitled to a writ of attachment. Art. 24.-12, supra.

understanding that you have conversed with the witness.
"MR. HAAS: That's correct.
"THE COURT: And that she appears to be evading any further process, and the Court will not delay the trial of the matter further. I will, however, take any steps that the Court may take to provide you with that witness...."
Whereupon the judge had the Courthouse searched for the witness, to no avail.

2. Separate from the issue of attachment is the issue of a continuance so that the witness sought to be attached can be brought to court to testify. Article 29.13, V.A.C.C.P., governs such matters when, as here, the trial has begun:
A continuance or postponement may be granted on the motion of the State or defendant after the trial has begun, when it is made to

appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant *is* so taken by surprise that a fair trial cannot be had.
In the case at bar, the court summarily denied attachment on the ground that there was no reasonable expectation of getting the witness without unduly delaying the trial. The judge apparently confused the concepts of attachment and continuance and superimposed upon both a non-statutory requirement that they not "unduly delay the trial." Moreover, even under the judge's seemingly merged concepts of attachment and continuance, the attorney amply demonstrated, as required by Art. 29.13, supra, that by some unexplained and unanticipatable occurrence since the trial began the defendant was so taken by surprise that he could no longer receive a fair trial. See discussion, *infra.*

When a subpoenaed witness does not appear, the party calling him must follow three steps to preserve error. First, the party must request a writ of attachment which must be denied by the trial court. *Denney*, supra, at 470. Second, the party must show what the witness would have testified to. *Id.; Rodriguez v. State*, 513 S.W.2d 22, 28 (Tex.Cr.App.1974); *Brito v. State*, 459 S.W.2d 834, 837 (Tex.Cr.App. 1970). Third, the testimony that the witness would have given must be relevant and material. *Rodriguez*, supra, at 28. If all three requirements have been met, reversible error will result "unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." Tex.R.App.Pro. Rule 81(b)(2).

In the instant case the witness, Callier, had been properly served with a subpoena, and appellant had requested a writ of attachment when she failed to appear as promised. The trial court had no legitimate reason to deny appellant's request for a writ of attachment. Thus, the first requirement is met.

In appellant's bill of exceptions, he established what Callier would have testified to had she been called. She would have been the only witness to testify that Leonard Hawkins said he killed the deceased, evidence which would certainly be important since Leonard Hawkins was deemed an accomplice as a matter of law. Her anticipated testimony was relevant and material as she had been a witness to appellant's alleged kidnapping of the victim. Thus, the second and third requirements were also met.

Having determined that the trial judge committed error and that appellant preserved the error, we must decide beyond a reasonable doubt whether the error made no contribution to the conviction or to the punishment. Rule 81(b)(2), supra. Central to this issue is the question of whether Callier's testimony would have been admissible evidence had her presence been compelled.

We find that Callier's testimony would have been admissible evidence under two separate theories. First, her testimony was proper impeachment of Hawkins. Hawkins testified on direct examination that appellant killed the victim. Hawkins denied on cross-examination that he had told Callier that he had himself killed the victim. Callier, therefore, could be called in order to impeach Hawkins. See *Thrash v. State*, 500 S.W.2d 834 (Tex.Cr.App.1973).

Second, Callier's testimony would have been admissible as original direct evidence of Hawkins' culpability. Hawkins was an accomplice witness who was so situated as to have possibly been the perpetrator of the crime himself. Although the general rule is that evidence of a third party's guilt is not admissible, *Ferrell v. State*, 429 S.W.2d 901 (Tex.Cr.App.1968), exceptions to this rule have evolved.

This issue was first addressed in *Dubose v. State*, 10 Tex.App. 230 (1881). In this case whether the State's witness, Bacquet, was an accomplice was a disputed issue. Without Bacquet's testimony, the State's case was based on weak, circumstantial evidence. The defendant attempted to call a witness, Waters, to testify that the deceased and Bacquet "were at enmity and had had a serious difficulty; that Bacquet habitually carried arms for Benton and threatened to take his life." *Dubose*, supra at 244. The trial court did not allow Waters' testimony and the defendant preserved his error by a bill of exceptions. The Court of Appeals held it was error to disallow Waters' testimony because when the major issue in the case is whether the *defendant* did the killing, he has the right to show that some other person committed the homicide by the same character of evidence relied on by the State for a conviction. *Dubose*, supra at 251.

Two lines of cases emerged as a result of the holding in *Dubose*, supra. The first line, referred to herein as the State's witness line, consistently permits evidence of a third party's guilt when the third party in question is a witness for the State against the defendant, regardless of whether that witness is an accomplice witness. In the second line, herein referred to as the ab-

sent party line, the third party is neither an accomplice nor a witness. Evidence of this third party's guilt is not admitted unless the State is relying only on circumstantial evidence.

To fully understand the distinction between the two lines, it is necessary to examine the cases in each line that followed *Dubose,* supra. In the following State's witness cases, evidence of the third party's guilt was held to be admissible. In *Kelley v. State,* 86 Tex.Cr.R. 281, 216 S.W. 188 (1919), the witness LeBlanc, who the court instructed was an accomplice, testified for the State that the defendant had set fire to a lumberyard. The defendant filed a motion for new trial on the basis of newly discovered evidence. The affidavit stated that two farmers in the community saw the defendant at his house and saw LeBlanc and two others at the scene of the fire shortly before the fire started. This Court held that a new trial should have been granted on the basis of this new evidence because the evidence "might have been regarded by the jury as important in accounting for the fire in a manner consistent with the innocence of the appellant." *Id.,* 216 S.W. at 189. It was also noted that these two *defense witnesses* had no motive to testify falsely.

In another case involving a State's witness, *Gilder v. State,* 61 Tex.Cr.R. 16, 133 S.W. 883 (1911), the defendant was found in possession of stolen guns. Other guns stolen from the same place were found in the possession of the State's witness, Smith. Smith testified that he bought the guns from the defendant. It was the defendant's contention that he had bought the guns found in his possession from Smith. The defendant was denied a continuance in order to call witnesses who would testify that Smith told them that he had stolen the guns. The Court held:

"If Smith took the guns and not appellant, he would not be guilty of the burglary. At least these facts would account for his possession of the property and strongly tend, if not in fact show that he did not commit the burglary. The confession was a fact appellant could introduce viewed in the light of the opportunity of Smith to do the thing and Smith's possession of the property. This has been the well-settled rule in Texas since the opinion of *Dubose v. State,* 10 Tex.App. 230."

*Gilder,* supra, 133 S.W. at 885.

*Harrison v. State,* 47 Tex.Cr.R. 393, 83 S.W. 699 (1904) involved a homicide in which the only people present were the victim, the accused and the State's witness. In *Harrison,* supra, the State's witness, Whitten, testified that the defendant killed the victim. Three other witnesses testified that Whitten told them shortly after the murder that he was solely responsible for the victim's death. The trial court instructed the jury that they were to consider the testimony of these witnesses as impeachment evidence only. This Court held that Whitten's statements to these witnesses were "clearly admissible as original testimony." *Id.,* 83 S.W. at 701. The limiting instruction was erroneous and injurious to the defendant. The holding in *Harrison,* supra, was summarized in *Smith v. State,* 52 Tex.Cr.R. 27, 105 S.W. 182, 184 (1907):

"All that we held in said case [Harrison v. State] was that on a prosecution for homicide, it being the theory of the defense that the crime was committed by a witness for the state who testified that he was present when defendant committed the crime, evidence of statements made by the witness out of court conflicting with his testimony was admissible as original evidence in behalf of the defense."

In another case, *Carter v. State,* 390 S.W.2d 271 (Tex.Cr.App.1965), only the victim, the defendant, and the state's witness, Cain, were present when the assault occurred. Cain testified that the defendant hit the victim with a hammer. It was the defendant's position that Cain had assaulted the victim. In a motion for new trial the defendant offered newly discovered evidence in the form of two witnesses who heard Cain confess to the assault. This Court held that Cain's confession was admissible as original evidence for the defendant.

A similar pattern can be found in all of the above cases. The State calls a witness who was present at the scene of the crime to give direct testimony that the defendant committed the crime. The defendant then tries to introduce testimony inculpating the State's witness and is denied. On appeal the evidence is held to be admissible as direct evidence that the defendant is not guilty. The case at bar also follows this pattern.

In contrast to the above cases, the cases in the absent party line allow evidence of a third party's guilt only in limited circumstances. This Court decided in *Ramirez v. State*, 543 S.W.2d 631,633 (Tex.Cr.App. 1976) that the defendant must meet three criteria before evidence of a third party's guilt is admissible. These criteria are (1) that the State is relying only on circumstantial evidence, (2) that the guilt of the third party is inconsistent with the guilt of the accused, and (3) that the facts show the third party was so situated that he might have committed the crime. In *Ramirez*, supra, the third party was neither an accomplice nor a witness for the State. Because the State's case was not based solely on circumstantial evidence, this Court held that evidence of the third party's guilt was not admissible. See also *Cameron v. State*, 153 Tex.Cr.R. 29, 217 S.W.2d 23 (1949), *Ballew v. State*, 139 Tex.Cr.R. 636, 141 S.W.2d 654 (1940), and *Woodard v. State*, 463 S.W.2d 197 (Tex.Cr.App.1971)

The concept of requiring a State's case to be wholly circumstantial was first discussed in *Stone v. State*, 98 Tex.Cr.R. 364, 265 S.W. 900 (1924). In this case a distinction is drawn between cases that involve accomplice witnesses and those that do not:

> "It [*Dubose*, supra] is entirely different from the case now under consideration, in that here Walton, whose hearsay statements were offered in evidence, was not used as a witness by the state at all but was at the time of trial in the penitentiary under a conviction of murder."

*Stone*, supra, 265 S.W. at 903. *Harrison* and *Gilder*, supra, are also distinguished for the same reason. *Stone*, supra, clearly delineates the two lines of authority: The *Dubose, Kelley, Harrison, Gilder*, and *Carter* cases that comprise the State's witness line and the *Ramirez, Cameron* and *Stone* cases that comprise the absent party line. The three part test set out in *Ramirez*, supra, therefore, has limited applicability to cases involving accomplice witnesses.

The first part of the test is wholly unworkable when the third party is an accomplice witness because the testimony of the accomplice witness will always provide *direct evidence* of the defendant's guilt. Where the accomplice witness is the third party in question, the State will never be relying solely on circumstantial evidence. Parts two and three should be applied in cases where the third party is an accomplice witness and were so applied in *Harrison* and *Dubose*, supra.

▮▮▮▮ Thus, when evidence of a third party's guilt is offered by the defendant and the third party in question is a State's witness, the evidence is admissible if the guilt of the third party is inconsistent with the defendant's guilt and the facts show the third party was so situated that he might have committed the crime. In the instant case the indictment alleges that appellant "BONNIE BURNETTE ERWIN did then and there intentionally and knowingly cause the death of PATRICK EUGENE BROOKS, an individual, by striking him in the head with a shovel." The offense, as alleged, allows for only one person to be guilty of the murder. If called, Callier would have testified that Hawkins and not appellant caused the death of Brooks. If the jury had heard Callier's testimony there is a strong possibility that there would be a reasonable doubt that appellant himself struck Brooks in the head. Thus, if Hawkins was guilty of striking Brooks in the head with the shovel, this would be inconsistent with appellant's guilt.

▮▮▮ The facts show that Hawkins was with appellant throughout all of the events that comprise the kidnapping and murder. According to his own testimony he was the only other person there when appellant allegedly strangled Brooks. He was also the

only other person present when appellant allegedly struck Brooks with the shovel to make sure he was dead. Hawkins' physical proximity during every stage of the crime shows that he was so situated that he, not appellant, might have committed the entire crime, just as he allegedly boasted to witness Callier.

Thus Callier's testimony meets both parts of the test and was admissible. Having found that Callier's testimony would have been admissible and that appellant preserved the trial court's error in failing to compel her presence, we have reviewed the entire record and are unable to find beyond a reasonable doubt that the error did not contribute to appellant's conviction and punishment. Rule 81(b)(2), supra. Thus we hold that reversible error was committed. Appellant's fourth point of error is sustained.

Since we have found reversible trial error, and since the evidence is sufficient to corroborate the accomplice witness' testimony, the case may be remanded to the trial court for a new trial. The judgment of the trial court is reversed and the cause is remanded for a new trial.

McCORMICK and CAMPBELL, JJ., concur in the result.

ONION, P.J., and W.C. DAVIS and WHITE, JJ., dissent.