**Michael Jermaine HOLLINS**

v.

**The STATE of Texas.**

**No. 01–93–00564–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

March 31, 1994.

924 ■

Layton W. Duer, Houston, for appellant.

1. Referred to in the record as Caudrell James

John B. Holmes, Jr., Dist. Atty., Scott A. Durfee, Elsa Alcala, Asst. Dist. Attys., Harris County, for appellee.

Before DUGGAN, O'CONNOR and HEDGES, JJ.

## OPINION

DUGGAN, Justice.

A jury found appellant, Michael Jermaine Hollins, guilty of aggravated robbery and assessed punishment at 10–years confinement. In four points of error, appellant contends that: (1) the trial court erred by its refusal to issue an attachment for a witness; (2) the prosecutor injected new and harmful facts into the case during argument; and (3) the trial court erred by excluding certain testimony of defense witnesses, Clifford Smith and Jason Routt, as hearsay. We affirm.

At approximately 3:30 p.m. on September 17, 1992, Heather Xydis went to a convenience store and bought a Coca–Cola. When she left the store and walked back to her car, two black males approached. One of the men stood on her right side close enough to touch her and had a gun; the other stood in front of her face-to-face, about an inch away. The man with the gun said, "Bitch, give me your keys or I'm going to shoot you." As he made this statement, he lifted his shirt and displayed a revolver in his pants with his hand on the trigger. Xydis responded, "What?" He repeated his statement, snatched her car keys from her hand, and fled with his companion in her car.

On September 27, 1992, the car was recovered from the parking lot of an apartment complex at 6300 Dumfries. Upon investigation, Houston police officer Vivian Ybarra determined that James Caudrell [1] (Caudrell) and Timothy Roberts had been in the car. Caudrell told Ybarra that he had gotten the car from someone named Michael. After arresting Caudrell, Ybarra returned to the

and as James Caudrell.

complex and talked to a group of men, one of whom was appellant. When appellant told Ybarra his name was Michael, she asked whether she could use his picture in a photo identification procedure. Appellant agreed. Xydis twice identified appellant as the man with the gun, first on October 1 from the photo spread, and again on October 9 from a lineup.

■ In his first point of error, appellant contends that the trial court erred by refusing to issue an attachment for Caudrell, a juvenile defense witness. After appellant called Caudrell as a witness, the following exchange occurred between the trial judge and Caudrell outside the presence of the jury:

A: Do I need a lawyer? Do I need to get a lawyer?

Q: Well, if there's been testimony from a police officer that you were charged with unauthorized use of a vehicle in connection with the maroon Nissan, are you telling me that charges—you didn't actually get charged with that? So, my reason for bringing, or talking to you outside the presence of the jury is to let you know that you could. You make a statement that is sufficient enough for the district attorney's office to file charges, they can file charges on you. If you admit to driving that car, even though you say that you didn't know it was stolen, they can still file charges on you.

A: Uh-huh.

Q: Do you understand that? They could file charges on you for unauthorized use of a motor vehicle, driving that maroon Nissan. Do you know that?

A: Yes, sir.

Q: I'm telling you that before you testify about that you may want to talk to your mother or your father or a lawyer or somebody. It's your choice. What do you want to do?

A: My mama is not here.

Q: Well, there any family member of yours here?

A: (Shakes head.)

. . . .

Q: So, do you want to testify knowing that a charge could be filed against you in this case for unauthorized use of a vehicle?

A: I don't want nothing to be charged against me.

Q: I think you better talk to a lawyer first before you testify.

. . . .

Q: Well, do you want to talk to your mother or you want to talk to a lawyer or you want to talk to someone before you testify about that car?

A: Yeah. I want to talk to somebody.

Q: Step down, and you can talk to your mother or talk to a lawyer and come back tomorrow morning and be here at 9:30.

The next morning, appellant's counsel called Caudrell to the stand, but he was not present. Appellant's counsel requested a writ of attachment, whereupon the following occurred between appellant's counsel and the trial judge:

Court: I don't know that Mr. Caudrell [James] is even coming back. He knew to come back. I told him to come back, but he also knew that if he were to testify in regards to his participation in an unauthorized use of a motor vehicle case he could be charged with it. So, he may not come back. All we can do is call a number and if somebody is there to tell him to come on, but if nobody answers the phone then I'm not going to continue this case so that this person can come up here or not come up here.

Counsel: So, am I to understand this Court will not issue a writ of attachment on a witness that has been subpoenaed and sworn in and has taken the stand and then told by the Court to return? This Court will not make this witness come back?

Court: No, sir, not under the circumstances that he left here I won't.

Counsel: Then I object.

Court: Because there's a very strong possibility if he were to show up today he wouldn't testify, because I was left with that impression yesterday that he didn't want to testify knowing that he could be charged with a felony.

Counsel: When I spoke to him—and the focus of my questioning is not as to his operating the motor vehicle.

Court: I understand that, Mr. Perkins, but do you understand that he is subject to cross-examination by the State that can go into that particular offense? I mean, do we live in a void here just because you are going to direct your questions in some form or fashion that the State is going to ignore that he might have committed a felony offense?

Counsel: My concern is my client's best interest.

Court: I understand. My concern is this witness who stands charged—no, faces being charged with a felony offense even though he is a juvenile. I instructed him he had a right to have a lawyer or talk to someone. He said he wanted to do that. If he doesn't show up, I get the impression he doesn't want to testify about this.

Counsel: I would like for him to appear in court and go on the record as to that.

Court: If he's not here I'm not going to continue it so we can find that out.

Both appellant and the State agree that *Erwin v. State,* 729 S.W.2d 709, 714 (Tex.Crim. App.1987), provides a three-step process for a party to demonstrate error when a subpoenaed witness does not appear.

First, the party must request a writ of attachment, which must be denied by the trial court. Second, the party must show what the witness would have testified to. Third, the testimony that the witness would have given must be relevant and material. If all three requirements have been met, reversible error will result "unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment."

*Id.* (citations omitted). The State concedes that appellant met the first step by requesting a writ of attachment which the trial court denied. The State argues, however, that appellant failed to meet the second and third steps.

Appellant's counsel dictated a bill of exception about the expected testimony:

What James Caudrell would testify to is that he had—he received a motor vehicle, the one in question in this case from a Mike. This Mike he never indicated was Michael Hollins, and he would testify to that effect. When Michael Hollins was picked up, James Caudrell approached the officers and told them, he will testify that he told them this is not the Michael that I was referring to. I believe James Caudrell would also have information regarding his knowing where the vehicle was, people who drove in it, and possibly more information as to who, in fact, this Michael was that he says he got a vehicle from. That's it.

Further, after the presentation of appellant's evidence, counsel made a second bill of exception.

If James Caudrell had been present it is possible that defense counsel would have been able to elicit certain testimony, that testimony being how Michael Hollins was in the vehicle and for what limited purpose he was, the extent of their friendship, the extent of that it was as the witnesses have testified, a hi-bye type relationship, that they did not hang out together or play basketball together. James Caudrell's testimony would corroborate the fact that the names Shaun, Jason, Cliff, Michael Hollins and other names, other mentioned prior in the record, that they do hang out and play basketball. I believe that certain testimony that was ruled hearsay is, in fact, ad-

missible based on the fact that it is against party interests and it is not being asserted for the—not trying to prove the truth of the matter asserted, that Michael Hollins did the crime, but for other reasons. Had this other testimony been elicited from James Caudrell and the other witnesses, that it would have been possible that defense counsel would not have been required to call Michael Hollins to the stand.

The State argues that this offer of proof fails to meet the second prong of *Erwin* because the statement was not sworn, and appellant failed to show that Caudrell would have been legally available to testify. We find nothing in *Erwin* to support the State's argument.[2] The State relies on cases decided before the adoption of Tex.R.App.P. 52(b), which contains no requirement for sworn testimony or for a showing of availability. We find that appellant met the second prong of *Erwin* in his bills of exception by making a sufficient showing of what the witness would have testified to.

We will now consider whether the anticipated testimony was (1) relevant, and (2) material. Appellant and the State agree that the disputed conduct is whether Caudrell got the car from appellant or from some other person named Michael. The State argues that Caudrell's statement tends to prove only that, at some point after the robbery, Caudrell got the car from someone other than appellant, which does not make it less likely that appellant robbed Xydis and had control of her car at the time of the robbery.

Jason Routt testified that Caudrell said appellant "didn't do it." Officer Ybarra testified that Caudrell said he got the car from a man named Michael, but did not know his last name. Caudrell's excluded testimony would have corroborated Routt's and Ybarra's testimony. "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more prob-

able or less probable than it would be without the evidence. Tex.R.Crim.Evid. 401. We find that the excluded testimony was relevant to appellant's defense that someone named Michael other than him took Xydis' car. We next consider the materiality of Caudrell's testimony.

■ Appellant and the State agree that to determine materiality, the omission must be considered in the context of the entire record, and error lies only if the omitted testimony creates a reasonable doubt that did not otherwise exist. *See United States v. Agurs,* 427 U.S. 97, 113, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342 (1976); *Stone v. State,* 583 S.W.2d 410, 415 (Tex.Crim.App.1979). The missing anticipated testimony of Caudrell was cumulative; the jury heard the testimony of Routt and Ybarra suggesting that Caudrell received the car from someone other than appellant. By contrast, Xydis positively selected appellant out of two photo spreads containing 12 photos and from a lineup of six persons as the person who robbed her at gunpoint and stole her car. Appellant claims that it is obvious Caudrell's testimony "might have affected the outcome of the trial." We do not find it obvious. Such doubt in appellant's favor was already created by the testimony of Routt and Ybarra. We do not find that the omitted testimony, considered in the context of the entire record, created a reasonable doubt that did not otherwise exist. Therefore, we find that appellant met the relevance part of *Erwin's* third prong, but failed to meet the materiality part.

Moreover, no evidence contradicts Xydis' eye witness testimony that it was appellant who had a gun, took her keys, and stole her car. The possibility that Caudrell received the car from another Michael only raises an inference about the identity of the robber, an inference already raised by both Routt and Ybarra.

■ Further, in determining the significance of evidence of a third party's guilt, the

**2.** The *Erwin* court implicitly found appellant's bill of exceptions adequate, "In appellant's bill of exceptions, he established what Callier would have testified to had she been called." *Id.* at 714.

*Erwin* court set forth two lines of cases, distinguished by the role of the third party. (Here, the third party is the absent party "Michael.")

> The first line, referred to herein as the State's witness line, consistently permits evidence of a third party's guilt when the third party in question is a witness for the State against the defendant, regardless of whether that witness is an accomplice witness. *In the second line, herein referred to as the absent party line, the third party is neither an accomplice nor a witness. Evidence of this third party's guilt is not admitted unless the State is relying only on circumstantial evidence.*

*Erwin,* 729 S.W.2d at 714–15. This case falls into the "absent party line" category. The absent "Michael" was neither an accomplice of appellant's nor a witness testifying about the robbery. Moreover, the State did not rely only on circumstantial evidence. Xydis positively identified appellant as the man with the gun who stole her car. Thus, even if the evidence could be considered material, it fails the harmless error analysis.

We overrule point of error one.

■ In point of error two, appellant contends that the trial court erred by allowing the prosecutor, during argument, to inject new and harmful facts into the case not supported by the evidence.

The prosecutor argued that, "When you look at it in the whole scheme of things in terms of what happens in the real world, and then what happened, all that will be consistent with the fact that he sold the car to this young juvenile [Caudrell], what would be consistent? $610 cash in his pocket." The trial court overruled defense counsel's objection that there was no evidence to support such a claim. On appeal, appellant claims that the suggestion that appellant got $610 from the sale of the car was the prosecutor's version of what Caudrell would have testified to. The State argues that the statement was a reasonable deduction from the evidence.

■ Proper jury argument encompasses four areas: (1) summation of the evidence;

(2) reasonable deductions arising from the evidence; (3) answers to opposing counsel's argument; and (4) pleas for law enforcement. *Albiar v. State,* 739 S.W.2d 360, 362 (Tex. Crim.App.1987); *Morris v. State,* 755 S.W.2d 505, 509 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). Counsel may draw inferences from the record that are "reasonable, fair, and legitimate." *Allridge v. State,* 762 S.W.2d 146, 156 (Tex.Crim.App.1988), *cert. denied,* 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238 (1989).

Officer Ybarra testified that when appellant was arrested, he had $610 cash in his pocket. Ybarra further testified that Caudrell said he got the car from a person named Michael. Routt testified that Caudrell claimed he bought the car for $2000. Appellant's name is Michael. Appellant testified that he knew Caudrell. Xydis identified appellant as the person who stole the car. We believe the prosecutor's suggestion that appellant got $610 from the sale of Xydis' car to Caudrell was a reasonable deduction from the evidence.

We overrule point of error two.

■ In points of error three and four, appellant contends the trial court erred by excluding certain statements of defense witnesses Clifford Smith and Jason Routt as hearsay because the statements qualify as exceptions to the hearsay rule. In point of error three, appellant complains about the exclusion of the following testimony:

> Defense counsel: When did James Caudrell tell you he took the car, prior to Michael Hollins being arrested?

> Clifford Smith: About—

The trial court then sustained the State's objection to the question based on hearsay. In point of error four, appellant complains about the exclusion of the following testimony:

> Defense counsel: Are you aware that James Caudrell made claim that he committed the crime?

> Jason Routt: Yes.

The trial court again sustained the State's objection to the question based on hearsay, and instructed the jury to disregard the answer. Because each of the excluded statements relates to whether Caudrell had admitted to stealing the car, we will consider the points of error together.

TEX.R.CRIM.EVID. 803(24) provides:

A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, or to make him an object of hatred, ridicule, or disgrace, that a reasonable man in his position would not have made the statement unless he believed it to be true. *A statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.*

■ To determine the adequacy of corroborating circumstances, we eliminate from consideration the hearsay testimony and examine other evidence tending to connect the declarant with the claimed offense. *Williams v. State,* 800 S.W.2d 364, 367–68 (Tex.App.—Fort Worth 1990), *pet. ref'd per curiam,* 805 S.W.2d 474 (Tex.Crim.App. 1991); *Cunningham v. State,* 846 S.W.2d 147, 150 (Tex.App.—Austin 1993, pet. granted). "If there is other evidence of an incriminating nature, the corroboration is sufficient; otherwise it is not." *James v. State,* 538 S.W.2d 414, 416 (Tex.Crim.App.1976). Corroborating evidence should make testimony more likely true than not. *Williams,* 800 S.W.2d at 367–68 (citing *Warren v. State,* 514 S.W.2d 458, 468 (Tex.Crim.App.1974)).

Appellant argues that Caudrell "seems to have told the whole neighborhood that he was driving a stolen car at a time when neither Caudrell nor appellant had been charged with any criminal activity establishes that the statements were not fabricated." Appellant, however, gives no citation to the record to support this conclusion. We find no other testimony that Caudrell told others

he was driving a stolen car other than the hearsay statements. Moreover, even if he told others he was driving a stolen car, that does not mean he actually took the car. Appellant may not rely on the hearsay statements to corroborate themselves.

Appellant further argues that Caudrell told Officer Ybarra that he got the car from a guy named Michael, but did not say if it was appellant. This does not corroborate the statement that it was Caudrell who took the car. In fact, it does the opposite; it suggests that someone other than Caudrell took the car, and that Caudrell ultimately got the car from someone named Michael.

Other evidence relied upon by appellant as corroboration is: (1) that the police arrested Caudrell for unauthorized use of a motor vehicle before appellant became a suspect in the robbery; (2) that defense witness Smith said he knew both appellant and Caudrell; (3) that Routt said he would not be surprised that Smith was one of the young men who played basketball behind the Huntington apartment complex; and (4) that Timothy Roberts was arrested by Ybarra. Appellant provides no argument about how this evidence corroborated Caudrell's hearsay claim that he took the car. We find nothing in this evidence to corroborate Caudrell's claim.

Further, the testimony from Smith that Caudrell took the car had already been introduced into evidence during the State's cross-examination of Smith:

Q: Do you know where Caudrell got the car from?

A: Well, he told—he told me what he did.

. . . .

Q: Did you know that that was a stolen car?

A: Yeah. *He told me he took it*—he told me—he—

Q: That's—I don't want to hear what he told you because that's hearsay. What I want to know is if you knew.

. . . .

Q: You knew that the car was stolen?

A: *He told me hisself* [sic].

The State commented that the testimony was hearsay but made no formal objection. Therefore, the testimony had been admitted into evidence for the jury's consideration. Because of its previous introduction and of Xydis' eye witness testimony, we cannot say that a reasonable possibility exists that the later excluded evidence might have contributed to the conviction. *Smith v. State*, 744 S.W.2d 86, 94 (Tex.Crim.App.1987); TEX. R.APP.P. 81(b)(2). We overrule points of error three and four.

We affirm the trial court's judgment.

O'CONNOR, Justice, dissenting.

I dissent. The majority found the trial court did not err by refusing to issue an attachment for a witness who was under subpoena but did not appear.

Caudrell, the witness, appeared at trial, ready to testify. The trial judge, on his own initiative, took the witness aside, out of the presence of the jury, and asked him if he wanted to talk to somebody—his mother or a lawyer—before testifying. The witness took the hint, and said he did. The next day, the witness did not appear.

The appellant, through counsel, asked the trial court to issue an attachment, which the trial judge refused. There is no question that the appellant was entitled to the attachment. TEX.CODE CRIM.P. art. 24.12 states in part:

When a witness who ... has been duly served with a subpoena to appear and testify in any criminal action or proceeding fails to so appear ... the defendant shall be entitled to have an attachment issued forthwith for such witness.

The only issue here is whether the trial court's refusal to issue an attachment was reversible error. In *Erwin v. State*, 729 S.W.2d 709, 714 (Tex.Crim.App.1987), the Court of Criminal Appeals outlined the requirements to prove reversible error when a witness under subpoena does not appear at trial:

1. The party requested the attachment, which the trial court denied.

2. The party showed on the record what testimony the witness would have provided.

3. The testimony of the witness would have been relevant and material.

When a party proves all three prongs, the trial court's judgment should be reversed "unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment." *Id.* at 714.

The majority finds that the appellant met the first, second, and part of the third prong. The only matter the majority finds that the appellant did not prove was that the testimony was material. Missing evidence is material when it would have created a reasonable doubt about the defendant's guilt. *See Butler v. State*, 736 S.W.2d 668, 671 (Tex.Crim. App.1987).

The appellant's counsel dictated a bill of exception about the expected testimony:

What James Caudrell would testify to is that he had—he received a motor vehicle, the one in question in this case from a Mike. This Mike he never indicated was Michael Hollins, and he would testify to that effect. When Michael Hollins was picked up, James Caudrell approached the officers and told them, he will testify that he told them this is not the Michael that I was referring to. I believe James Caudrell would also have information regarding his knowing where the vehicle was, people who drove in it, and possibly more information as to who, in fact, this Michael was that he says he got a vehicle from. That's it.

In a second bill of exception, counsel added:

If James Caudrell had been present it is possible that defense counsel would have been able to elicit certain testimony, that testimony being how Michael Hollins was

in the vehicle and for what limited purpose he was, the extent of their friendship, the extent of that it was as the witnesses have testified, a hi-bye type relationship, that they did not hang out together or play basketball together. James Caudrell's testimony would corroborate the fact that the names Shaun, Jason, Cliff, Michael Hollins and other names, others mentioned prior in the record, that they do hang out and play basketball. I believe that certain testimony that was ruled hearsay is, in fact, admissible based on the fact that it is against party interests and it is not being asserted for the—not trying to prove the truth of the matter asserted, that Michael Hollins did the crime, but for other reasons. Had this other testimony been elicited from James Caudrell and the other witnesses, that [sic] it would have been possible that defense counsel would not have been required to call Michael Hollins to the stand.

The appellant and the State agree that the disputed conduct is whether Caudrell got the car from the appellant or from some other person named Michael. The State argues that Caudrell's statement tends to prove only that, at some point after the robbery, Caudrell got the car from someone other than the appellant, which does not make it less likely that the appellant robbed Xydis and had control of her car at the time of the robbery.

The appellant and the State agree that to determine materiality, the omission must be considered in the context of the entire record, and error lies only if the omitted testimony creates a reasonable doubt that did not otherwise exist. *See Stone v. State*, 583 S.W.2d 410, 415 (Tex.Crim.App.1979).

The majority holds that Caudrell's anticipated testimony was cumulative because the jury heard Routt and Ybarra's testimony that suggested Caudrell received the car from someone other than the appellant. I disagree with the majority's analysis for two reasons. First, the testimony from Routt and Ybarra, which merely "suggested" Caudrell received the car from another person

named Michael, is not cumulative of direct testimony from Caudrell that he got the car from someone else. Second, Caudrell's direct testimony is not cumulative of the hearsay testimony from Routt and Ybarra. Routt and Ybarra testified to what Caudrell told them; their hearsay testimony about what Caudrell told them can hardly render Caudrell's testimony cumulative. His statement was the source of their information.

The majority contrasts the missing testimony with the testimony of Xydis, who identified the appellant out of two photo spreads and from a lineup as the person who robbed her at gunpoint and stole her car. The majority's point is that the jury could have easily believed Xydis, no matter what evidence Caudrell contributed. The majority's point **strengthens** the appellant's argument that Caudrell's testimony was material. Xydis' testimony made Caudrell's testimony more material, not less.

I would hold that the appellant met the materiality part of the third prong in *Erwin*. Caudrell's testimony, as recounted by on the bill of exceptions, could have created a reasonable doubt in the minds of the jurors about the defendant's guilt.

If we had held the appellant proved all three requirements, we would then examine the record to determine if, beyond a reasonable doubt, "the error made no contribution to the conviction or to the punishment." *Erwin*, 729 S.W.2d at 714. On this record, we could not hold, beyond a reasonable doubt, the error did not contribute to the conviction.

I would reverse.