# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

September 29, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

LISA DIANE WAGNER,                 )
                                   )
    Plaintiff/Appellee,            )          Appeal No.
                                   )          01A01-9804-CV-00215
                                   )
                                   )          Sequatchie Circuit
CHARLES BRADLEY GASTON,            )          No.  6307
                                   )
    Defendant/Appellant.           )
                                   )


APPEAL FROM THE CIRCUIT COURT
FOR SEQUATCHIE COUNTY


THE HONORABLE THOMAS W. GRAHAM PRESIDING


STEPHEN T. GREER, P.C.
10B RANKIN AVENUE NORTH
P.O. BOX 758
DUNLAP, TENNESSEE 37327

ATTORNEY FOR PLAINTIFF/APPELLEE


AUBREY L. HARPER, ESQUIRE
114 NORTH COLLEGE STREET
P.O. BOX 588
McMINNVILLE, TENNESSEE 37111-0588

ATTORNEY FOR DEFENDANT/APPELLANT


**AFFIRMED AND REMANDED**


        PATRICIA J. COTTRELL, JUDGE


CONCUR:

CANTRELL, J.
CAIN, J.

# Opinion

In this case, Mr. Charles Bradley Gaston (hereafter "Father") appeals the trial court's denial of his request that the existing child custody order regarding his three minor children be modified to grant him custody. We affirm the order of the trial court.

Lisa Diane Wagner (hereafter "Mother") filed for divorce on May 20, 1993, alleging cruel and inhuman treatment. The parties were divorced following a trial in January of 1994, and the final order was entered on February 11, 1994.[1] As part of that order Mother was granted exclusive custody of the couple's three minor children. Visitation was provided for Father on a very limited basis. At first he was granted 6 hours of visitation per week, to later expand to 8 hours per week.

Five months after entry of the final order, Mother was granted an order of protection enjoining Father from coming around her, abusing her, or threatening to abuse her. Eight months after entry of the final order, Father filed a Petition to Modify requesting that he be granted custody or, in the alternative, increased visitation. On August 6, 1997, Father filed another motion requesting "standard visitation" during the pendency of his Petition. Earlier that year, the parties had entered an Agreed Order concerning counseling for the three children. After discovery disputes, substitutions of counsel, and hearings on other issues not relevant to this appeal, this matter was tried.

The trial court found that there had not been a material change of circumstances since the final decree of divorce to justify the requested modification of custody. However, the court did find that there had been a

---

[1] The order states that Mother had lived in an abusive marriage during the course of her marriage with Father.

material change of circumstances sufficient to justify a modification of the visitation arrangement. Accordingly, Father was denied custody, but he was granted increased visitation. In its order, the trial court gave specific instructions regarding visitation, including allocating various holidays. The court also limited Father's visits to the children's school to once per month and for the sole purpose of having lunch with his children. The court also strictly prohibited Father, during his visitation periods, from tape recording, videotaping and photographing the children for investigative purposes. Father now argues that the trial court erred by denying him sole custody of the couple's three minor children.

## I.

Cases involving a request for change of custody of minor children are particularly fact driven. *See Rogero v. Pitt*, 759 S.W.2d 109, 112 (Tenn. 1988). In such cases, the trial court has the widest discretion to order a custody arrangement that is in the best interest of the child. *See e.g. Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. App. 1996); Tenn. Code Ann. § 36-6-101(a)(2) (1996). Accordingly, it is well settled that the appellate court's review of a trial court's findings in a custody dispute is *de novo* on the record, accompanied by a presumption of correctness. *See Nichols v. Nichols*, 729 S.W.2d 713, 716 (Tenn. 1990); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). An appellate court will not reverse such a decision, absent an error of law, unless the appellate court finds that the evidence preponderates against the trial court's findings. Tenn. R. App. P. 13(d); *See Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. App. 1995); *Haas*, 676 S.W.2d at 555.

A decree awarding custody of children is *res judicata* and is conclusive on a subsequent application to change custody unless circumstances have changed

3

in a material way so that the welfare of the children requires a modification of the previous order. *See Long v. Long*, 488 S.W.2d 729, 731-732 (Tenn. App. 1972); *Hicks v. Hicks*, 26 Tenn. App. 641, 176 S.W.2d 371, 374-375 (1943). Courts are empowered to change custody "as the exigencies of the case may require." Tenn Code Ann. § 36-6-101(a)(1).

"Notwithstanding the importance of stability and continuity, intervening changes in a child's circumstances may require modifying an existing custody and visitation arrangement." *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. App. 1997). However, a custody order cannot be modified absent a showing of new facts or "changed circumstances" which require an alteration of the existing order. *Id.*

There is no hard and fast rule as to what constitutes a change of circumstances. *See Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn. App. 1983). However, "changed circumstances" includes any material change of circumstances affecting the welfare of the child or children, including events occurring since the initial custody decision or changed conditions which could not have been anticipated by the original custody order. *See Blair v. Badenhope*, 940 S.W.2d 575, 576 (Tenn. App. 1996).

Only if the court finds that a material change of circumstances has occurred, will the court proceed to determine if the best interest of the child dictates a change in the existing custody arrangement and to devise a custody arrangement that serves those interests. *See Adelsperger*, 970 S.W.2d at 485.

## II.

The parties in this case had a less than amicable parting, and their post-divorce interaction has continued to be contentious, involving ongoing litigation. At the time of the divorce, the trial court, after considering the evidence

4

presented, strictly limited Father's visitation with the children. After some time, Mother allowed greater visitation, including overnight stays. She discontinued this practice, however, when she learned that Father had been audio taping the children extensively. She was concerned that Father was attempting to undermine her relationship with the children.

In his efforts to document his allegations about Mother's treatment of the children, Father began, soon after the divorce, taping the children's accounts to him of Mother's conduct and of various events in their lives. Father recorded forty to sixty tapes, sixty to ninety minutes in length each. He testified that they consisted primarily of statements of the children about things Mother had done or things that had happened to the children. Both psychologists who testified opined that such activity by the Father could undermine the children's relationship with Mother.

Father also took photographs, and had some taken by a professional photographer, of the children, generally in their underwear or naked, purportedly to show bruises or rashes. The court determined that the photographs did not demonstrate anything outside the normal for active children. The psychological testimony was that such repetitive photographing of the children could send inappropriate messages to the children, again undermining the children's relationship with their mother.

Father's claim of a material change in circumstances rests on his allegations that Mother had abused the children by inflicting excessive corporal punishment on the children.[2] The children's school guidance counselor and two

---

[2] Father does not object to corporal punishment itself and expressed a desire that he be allowed to use corporal punishment to discipline the children when they are with him. He had been under court order prohibiting him from using such punishment since the pendency of the original divorce complaint.

trained psychologists who had interviewed or counseled the children testified that they had not observed evidence of abuse. The court heard the two older children in chambers. Both said that Mother had spanked them, but the spankings had occurred a long time ago. Both children indicated that they were happy, and loved both parents.

Having heard all of the testimony the trial judge announced his finding from the bench that "I don't think there's a physical abuse problem here at all." The trial court found no change of circumstance, thereby holding that Father has failed to meet his burden of proof.

The trial court's findings of fact are entitled to the presumption of correctness on appeal, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d) We see nothing in the record to contradict the trial court's finding. We, therefore, uphold the trial court's conclusion that there has not been a material change of circumstances sufficient to justify a change of custody. Because there has not been a material change of circumstances, it is unnecessary and would be improper for this court to undertake a comparative fitness analysis. *See Adelsperger*, 970 S.W.2d at 485.

### III.

Father also argues that he did not receive a fair trial because the trial court allegedly decided the case before all of the evidence was heard, apparently based on comments the court made prior to hearing the testimony of two of the children. This issue is without merit.

Father had filed a motion to allow the three children, aged 8, 7, and 4, appear either in open court or in chambers, to express their preference regarding custody. At trial the court heard testimony from Father, Mother, Father's new wife, Mother's boyfriend, the children's guidance counselor and two

6

psychologists. At various points in the hearing, the attorneys and the court had discussions about the remaining witnesses for each side (Mother intended to call a number of witnesses who were waiting to testify), including discussions of the burden of proof. At the close of Father's other proof, he indicated an intention to call the two older children, then aged 8 and 7, as witnesses. Mother objected to the children testifying because of the potential traumatizing effect on them. The court expressed concerns about having such young children testify, and said:

> All right. I'll talk to the two oldest children. I said I would, and I will. I don't think its going to affect my decision, I'll let you know and you[3] can put your other proof on, O.K? ... [M]y decision right now is that the burden has not been met. My further decision is that there is [a] need to extend visitation, that you have met the burden of establishing that you are fit to have more extended visitation.

The trial court then spoke with the two older children in chambers with the parties, their counsel and the court reporter present. Father's objection on appeal appears to be related to the comments quoted above.

At various points during the hearing, which lasted late into the evening, the court and counsel consulted on the order of proof, whether witnesses would be necessary or cumulative, and similar issues related to the conduct of the hearing. As part of deciding whether to allow the children to appear as witnesses, the court assessed whether Father had met his burden to that point. Giving Father every opportunity to prove his case, the court acceded to Father's request and heard from the children in chambers. After hearing from the children, the court made its finding that Father had not demonstrated a material change of circumstances. We find no error on the part of the trial court. Additionally, on appeal, Father has not articulated how he was in any way prejudiced by the court's actions. *See Memphis Bd. of Realtors v. Cohen*, 786

---

[3] From the context of the entire discussion, the court was referring to Mother's ability to call her other witnesses and put on proof if Father met his initial burden.

S.W.2d 951, 953 (Tenn. App. 1989); Tenn. R. App. P. 36(b).

IV.

The trial court herein fashioned an order which was consistent with the testimony. The children were affected by the conflict between their parents and the continuing litigation which encouraged Father to tape and photograph the children. Both psychologists recommended increased visitation with Father, and both recommended that the taping and photographing cease. One also recommended limitations on Father's visits to school. Mother favored increased visitation with Father as long as the taping, photographing, and other efforts to alienate the children from her were stopped. This was, in essence, the trial court's order.

For the reasons stated above we affirm the order of the trial court. This case is remanded to the trial court for whatever further proceedings may be necessary. Costs of this appeal are assessed to the appellant.

_____
PATRICIA J. COTTRELL, JUDGE

CONCUR:


_____
BEN H. CANTRELL, P. J., M.S.


_____
WILLIAM B. CAIN, JUDGE