Affirmed and Opinion filed January 26,
2010

 

In
The

Fourteenth
Court of Appeals



NO. 14-07-01031-CR



Vellar Clark,
III, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 351st District Court

Harris County, Texas

Trial Court
Cause No. 1091884



 

OPINION 

A
jury convicted Vellar Clark, III of capital murder and sentenced him to life
imprisonment with no possibility of parole in the Institutional Division of the
Texas Department of Criminal Justice.  Clark appeals the trial court’s
judgment. First, Clark contends that he was
denied due process during the trial because the State harassed and badgered him
during cross examination.  Second, Clark asserts that the trial court
reversibly erred by not granting his request for a writ of attachment, and he
was harmed by this denial.  Third, Clark contends that he was denied a fair
trial when the trial court allowed improper opinion testimony from police
officers about Clark’s truthfulness.  Finally, Clark asserts the court erred by
denying Clark the opportunity to present evidence concerning the custody status
of the complainant’s child as well as various Child Protective Services (“CPS”)
records, which were allegedly essential evidence to his defense.[1]  We affirm.


I

Vellar
Clark, III and Gwen Sneed met in 2002 through a motorcycle club.  Although Clark
was married at the time, he and Sneed had an affair and eventually started
living together.  As a result of the affair, Clark and Sneed had a son
together.  But in December 2004, their son died of unknown causes.  CPS worker
Stephanie Okpiabhele testified that she evaluated Sneed in early 2005, and
Sneed told her that she had suicidal thoughts and feelings.  When the State
cross examined Okpiabhele, she testified that in 2006, Sneed’s mental state had
changed.  She was now upbeat and happy because she was pregnant with another
child, also by Clark, and “she had a very good outlook to life at that time.” 
Sneed’s mother, June Sneed, testified that Sneed believed her pregnancy was a
miracle because she had undergone a tubal ligation in 2004.  June Sneed also
testified that Sneed told her Clark wanted Sneed to get an abortion, but she
refused.   

On
March 26, 2006, a security guard found the body of Sneed in an isolated parking
lot.  She had died from a gunshot wound to her head that entered right behind her
left ear.  Sneed’s unborn child also died when Sneed was shot.  Sneed was found
lying next to her motorcycle, which still had the key in the ignition, with all
of her possessions intact except for her cell phone.    

The
Houston Police Department (“HPD”) discovered Sneed’s identity after June Sneed
contacted the department.  She had seen her daughter’s motorcycle in a story on
the evening television news.  HPD officer Guillermo Gonzales testified that
June Sneed suggested that he should speak with Clark about the shooting.  Officers
contacted Clark about a week after the shooting, and Clark voluntarily spoke
with them about Sneed.  He admitted to seeing Sneed drive by him that day on
her motorcycle on her way to an anger-management class as well as to speaking
to her on the phone sometime before noon.  

Clark
also told officers that later that day he went to his parents’ home.  HPD
officers Breck McDaniel and Gonzales testified, however, that Clark’s statement
about his location could not be true because his cell-phone records did not
indicate he was near his parents’ home.  In fact, his cell-phone records and
Sneed’s cell-phone records indicated that they were near each other at the time
of her death.  Additionally, the records showed that Sneed and Clark called
each other numerous times during the hours before her death.  When confronted
with the cell-phones record during his second police interview, Clark admitted
to being with Sneed when she died.  Before trial, the court held a hearing on a
motion to suppress Clark’s statements that he made to officers during his
police interviews.  The court denied the motion.     

In
his defense, Clark testified at trial that Sneed told him to follow her to the empty
parking lot.  Clark stated that Sneed was upset and grabbed his gun out of his
car.  Clark testified that Sneed then asked him whether he was “going to be
with her.”  Clark testified that when he responded no, Sneed shot herself in
the back of the head.  To support his theory of suicide, Clark requested that
evidence concerning the custody status of Sneed’s daughter as well as various
CPS records be admitted into the record.  The trial judge denied his multiple
requests because of the tangential nature of the evidence as well as the
potential prejudicial effect of the evidence. 

After
hearing all the evidence, the jury found Clark guilty on the charge of capital
murder and sentenced him to life in prison without the possibility of parole. 
This appeal followed.       

II

            In
his first issue, Clark contends that the trial court erred by constantly
allowing the State to badger, harass, and physically intimidate him to the
point of denying his right to a fair trial and due process.  Clark highlights a
number of the prosecutor’s questions, comments, and tactics throughout the
cross examination to illustrate the denial of due process.  These examples
range from the prosecutor telling Clark, “You’re going to get caught in another
lie,” to the prosecutor holding a gun while questioning Clark.  The State
contends that Clark waived his due-process complaint because he never
specifically objected to a violation of due-process rights during the cross
examination.  We agree with the State that Clark waived his first issue by not
properly preserving error at trial.

            The
Texas Rules of Appellate Procedure require a party to preserve error for
appellate review by demonstrating the error on the record. Tex. R. App. P.
33.1(a); see also Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App.
1995).  The party must make the complaint in a timely manner and “state[] the
grounds for the ruling that the complaining party [seeks] from the trial court
with sufficient specificity to make the trial court aware of the complaint.”
Tex. R. App. P. 33.1(a)(1)(A).  In raising the complaint on appeal, the party
must ensure the point of error is the same as the complaint or objection made
during trial. Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App.
2002); Turner v. State, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991)
(citing Thomas v. State, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986)). 
The Texas Court of Criminal Appeals has held that constitutional errors can
also be waived if a party failed to properly object to the errors at trial.  Briggs
v. State, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).  Therefore, if a
party’s objection at trial does not correspond with its issue on appeal, the
party has waived the issue. Broxton, 909 S.W.2d at 918.  

            Here,
Clark repeatedly objected to the prosecutor’s comments, questions, and tactics as
sidebar, argumentative, mischaracterization, invading the province of the jury,
and badgering.  But Clark’s issue on appeal is the denial of his due-process
rights.  Additionally, although Clark’s brief discusses fundamental fairness in
the context of prosecutorial misconduct, he did not object to prosecutorial
misconduct at the trial.  Furthermore, the prosecutor’s cross examination does
not rise to the level of fundamental error.  See Powell v. State, 252
S.W.3d 742, 744–45 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (discussing
how fundamental errors, which are “‘structural defects in the constitution of
the trial mechanism,’” violate constitutional rights such as the right to
impartial judge, the right to counsel, the right to not have members of the
defendant’s race unlawfully excluded from the grand jury, the right to
self-representation, the right to a public trial, and the right to not have a
judge taint the presumption of innocence) (quoting Arizona v. Fulminante,
499 U.S. 279, 309 (1991)).  Nor does the record reflect that Clark requested a
motion for new trial because of the prejudicial effect of the cross examination
on Clark’s right to a fair trial.  The record is simply devoid of a due-process
objection or an objection that corresponds with the objections made at the
trial level.  Therefore, Clark has waived this issue. 

III

In
his second issue, Clark contends that the trial court reversibly erred by not
granting his request for a writ of attachment.  Specifically, Clark asserts
that the testimony of his missing witness, Dr. Walker, was essential to his
case, and he was harmed because of the court’s failure to force Dr. Walker to
appear.  The State contends that since Clark never properly served Dr. Walker,
the trial court was not required to issue a writ of attachment.  We review the
trial court’s decision to deny the writ of attachment using the
abuse-of-discretion standard.  See Emenhiser v. State, 196 S.W.3d
915, 921 (Tex. App.—Fort Worth 2006, pet. ref’d); Rodriguez v. State, 90
S.W.3d 340, 358 (Tex. App.—El Paso 2001, pet. ref’d).

Under
both the United States Constitution and the Texas Constitution, a defendant has
a right to compulsory process in order to call witnesses to testify on his
behalf. U.S. Const. amend. VI; Tex. Const. art. I, § 10; Etheridge
v. State, 903 S.W.2d 1, 7 (Tex. Crim. App. 1994).  The Texas Code of
Criminal Procedure, however, requires a defendant to file an application for a
subpoena with the trial court’s clerk if the defendant wants to ensure the
witness’s presence. Tex. Crim. Proc. Code Ann. § 24.03(a) (Vernon 2009).  The
defendant must then properly serve the witness.  Id. § 24.04(a) (Vernon
2009).  If the witness ignores the “duly served” subpoena, the requesting party
shall be entitled to a writ of attachment “commanding some peace officer to
take the body of a witness and bring him before such court . . . on the day
named . . . to testify in behalf of the State or of the defendant . . . .”  Id.
§ 24.11 (Vernon 2009); see id. § 24.12 (Vernon 2009); see also
Rodela v. State, 829 S.W.2d 845, 848 (Tex. App.—Houston [1st Dist.] 1992,
pet. ref’d).  

A
defendant is not entitled to a writ of attachment if he fails to properly serve
the subpoena on the witness.  Ford v. State, 14 S.W.3d 382, 391−92
(Tex. App.—Houston [14th Dist.] 2000, no pet.); see Erwin v. State, 729
S.W.2d 709, 713−14 (Tex. Crim. App. 1987), overruled on other grounds,
Burks v. State, 876 S.W.2d 877 (Tex. Crim. App. 1994).  If a party duly
subpoenas a witness and the witness does not appear, the party must follow a
three-step process to preserve error—the Erwin procedure. Sturgeon v.
State, 106 S.W.3d 81, 85 (Tex. Crim. App. 2003).  The Erwin
procedure includes: (1) seeking a writ of attachment, which the trial court
must deny; (2) showing the court what the witness would have testified to; and
(3) demonstrating that the witness’s testimony would have been relevant and
material. Sturgeon, 106 S.W.3d at 85 (citing Erwin, 729 S.W.2d at
714).  In Sturgeon, the court stated the “proper showing” requirement in
step two of the procedure must be ascertainable from the record. Id. at
85−88.  The court concluded that because Sturgeon had fully explained
what the witness was expected to testify to, error was preserved. Id. at
89–90.  Finally, the court asserted that in detailing the witness’s purported
testimony, Sturgeon had also demonstrated the witness’s relevance and
materiality to his case.  Id. at 90.  

Clark
contends that the trial court should have issued a writ of attachment and erred
in failing to do so.  At trial, Clark wanted to question his expert, Dr. Walker,
about Sneed’s state of mind in order to support his defense of suicide.  The
appellate record indicates that Clark properly served a subpoena on Dr. Walker,
thereby fulfilling the first step in the Erwin procedure.  But Clark has
not met the next two steps in the Erwin procedure.  Clark’s attorney
never made a “proper showing” to preserve error on the record or demonstrated the
materiality of Dr. Walker’s testimony.  Clark’s attorney merely stated, “Dr.
Walker’s testimony would be essential and bears on the facts.”  

Even
if Clark met the last two steps of the Erwin procedure, the exclusion of
Dr. Walker’s testimony would not rise to reversible error.  Id. at 88.  CPS
worker Okpiabhele testified that she had directed Sneed to get a psychological
evaluation.  The records Clark sought to introduce included Dr. Walker’s psychological
evaluation of Sneed.  The jury, however, heard testimony about the evaluation
because Clark’s last witness, Dr. Flynn, testified about reviewing it.  He
testified that the report stated that Sneed had many mental disorders and that
these disorders increased her risk of suicide.  Because the jury heard
testimony about the results of the psychological evaluation, any error would
not have risen to the level of a reversible error.  Accordingly, we overrule
Clark’s second issue.

IV

            In
his third issue, Clark contends that the trial court improperly allowed a
State’s witness to testify about his truthfulness; therefore, he was denied due
process and the right to a fair trial.  Clark points to the testimony of
State’s witness Sergeant Harris to illustrate where in the record Clark’s
veracity was questioned.[2] 
Clark objected to the testimony invading the province of the jury as well as
being an improper opinion.  The State asserts that the officer’s testimony was
based on his perception and was helpful to the understanding of his testimony,
in accordance with Texas Rule of Evidence 701.  Additionally, the State
contends that even if the trial court erred, the error was harmless.  We review
the trial court’s decision using an abuse-of-discretion standard. Fairow v.
State, 943 S.W.2d 895, 901 (Tex. Crim. App. 1997).  If evidence supports
the trial court’s decision to admit evidence, then there is no abuse of
discretion, and the appellate court must defer to the trial court’s decision. Osbourn
v. State, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002) (citing Powell v.
State, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001)); Fairow, 943
S.W.2d at 901).   

Clark
primarily relies on Schutz v. State for the proposition that one witness
may not directly comment or testify to the veracity of another witness. 957
S.W.2d 52, 59 (Tex. Crim. App. 1997).  Clark also asserts that Sergeant
Harris’s testimony exceeds the bounds of Rule 701.  Furthermore, Clark argues
that Sergeant Harris may not serve as a “human lie detector” or decide an issue
for the jury—Clark’s credibility.

            “A
witness can testify in the form of an opinion under Rule 701 if the opinions or
inferences are (a) rationally based on his or her perceptions and (b) helpful
to the clear understanding of his testimony or the determination of a fact in
issue.”  Osbourn, 92 S.W.3d at 535.  While police officers typically
testify as qualified experts under Rule 702, an officer may also be considered
a lay witness under Rule 701. See id. at 536−37.  In order for lay
testimony to be based on a witness’s perception, the witness must have
personally experienced or observed the event. See id. at 535.  The
witness may also make reasonable inferences based on his perceptions.  See
Wilson v. State, 605 S.W.2d 284, 286–87 (Tex. Crim. App. 1980).  Sergeant
Harris assisted in the investigation of Clark as well as interviewed him during
his second police interview.  He questioned Clark about Sneed’s death and
testified to Clark’s behavior during the interview.  Specifically, he testified
to Clark’s evasiveness as well as the inconsistencies in his story from his
first interview.         

            Sergeant
Harris’s testimony, however, sometimes exceeded merely describing his
observations and perceptions of Clark.  During the testimony, Sergeant Harris
testified that Clark changed his story and had a selective memory.  He stated
that a truthful person would be able to remember all the details of Sneed’s
alleged suicide.  Sergeant Harris also testified that he did not believe
Clark’s story because it was “ridiculous” and inconsistent.  Defense counsel
objected to this line of questioning, and the trial court both overruled and
sustained objections to Sergeant Harris’s responses.  

            Without
deciding whether the court erred in admitting Sergeant Harris’s testimony, we
review the record to determine if any error would be harmful.  Rule of
Appellate Procedure 44.2(b) states that a non-constitutional error, which does
not affect the defendant’s substantial rights, must be disregarded. Tex. R.
App. P. 44.2(b).  A substantial right is affected if: (a) the error influences
the jury’s verdict or creates a “‘substantial or injurious’” effect or (b)
“‘leaves one in grave doubt whether it had such an effect.’” Sauceda v.
State, 162 S.W.3d 591, 597 (Tex. App.—Houston [14th Dist.] 2005, pet. ref’d)
(quoting Davis v. State, 22 S.W.3d 8, 12 (Tex. App.—Houston [14th Dist.]
2000, no pet.)).  In conducting a harm analysis, we consider the record in its
entirety, including all admitted evidence, “the nature of the evidence
supporting the verdict, the character of the alleged error and how it might be
considered in connection with other evidence in the case.” Motilla v. State,
78 S.W.3d 352, 355 (Tex. Crim. App. 2002); Sauceda, 162 S.W.3d at 597.  We
may also review the parties’ closing arguments, the parties’ theories of the
case, jury instructions, and whether the State highlighted the error. Motilla,
78 S.W.3d at 355−56. 

            In
reviewing the record, we find the error, if any, to be harmless, as evidence of
Clark’s guilt is pervasive throughout the record.  While Clark contends that
Sneed’s death was a suicide, the State presented evidence that suicide was highly
unlikely.  State witnesses testified that Sneed was pregnant.  They testified
that she wanted to have her baby because she thought it was a miracle she was
pregnant.  There was evidence that Clark had asked Sneed to get an abortion and
that she refused.  Even Clark’s own witness, CPS worker Okpiabhele, testified
that although Sneed had expressed thoughts of suicide in 2005, in 2006, Sneed
“was happy [and] upbeat” and “she had a very good outlook to life at that
time.”  Additionally, various HPD officers testified that it was highly
unlikely Sneed shot herself because of the angle of the bullet wound through
her head, the high probability of the gun jamming at that angle, and the lack
of stippling around her wound.  

When
first questioned about the incident, Clark told the police he was not present
at the shooting.  But after officers told Clark they had traced the location of
his cell phone and Sneed’s cell phone, Clark admitted to being with Sneed when
she died.  Moreover, Clark himself admitted to lying to police officers.  He
testified that he lied about his whereabouts the day Sneed died as well as his
contact with Sneed and his wife that day.  The evidence of his guilt along with
the fact that, in the presence of the jury, Clark admitted to lying numerous
times to police officers renders any possible error harmless.  We overrule his
third issue. 

V

            In
his fourth issue, Clark contends that the court erred by denying him the
opportunity to present evidence concerning the custody status of Sneed’s child
as well as various CPS records.  Clark asserts this amounts to a denial of his right
to present a defense—that Sneed committed suicide.  Specifically, Clark alleges
that the court improperly denied evidence regarding (1) CPS’s removal of
Sneed’s daughter, (2) questions on cross examination of Sneed’s mother about
her knowledge of CPS records or their contents, (3) CPS records concerning
Sneed’s daughter and the death of her son, and (4) Sneed’s motive for being
“upbeat” to the CPS worker.  The State contends that the court correctly
decided that the abovementioned evidence’s prejudicial effect substantially
outweighed its probative value and that the evidence was merely tangential to
the case.  Additionally, the State asserts that even if there was error, it was
harmless.  

We
review the trial court’s exclusion of the evidence using an abuse-of-discretion
standard. Apolinar v. State, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005);
Webb v. State, 991 S.W.2d 408, 418 (Tex. App.—Houston [14th Dist.] 1999,
pet. ref’d).  Although a trial court has substantial discretion, it can abuse
its discretion if its rulings are outside of “that zone within which reasonable
persons might disagree.”  Webb, 991 S.W.2d at 418; see also Apolinar,
155 S.W.3d at 186.  A trial court’s ruling on the admissibility of evidence
will be upheld if the record reasonably supports the ruling. Willover v.
State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).  

Clark
contends that “any right . . . to present his defense was wholly and completely
eviscerated by the trial court in violation of the Constitution . . . .”  He
cites Potier v. State, 68 S.W.3d 657 (Tex. Crim. App. 2002), to support
his contention that the denial of evidence was not merely an erroneous ruling,
but a constitutional violation.  In Potier, the appellant was convicted
of murder, but he had claimed self-defense during the trial. Id. at
658.  The appellant complained on appeal that the trial court had excluded
testimony from his neighbors that the victim intended to kill him, thereby significantly
impeding his defense. Id.  The court of appeals agreed that the trial
court erroneously excluded the evidence, but concluded that the error was
harmless. Id.  

The
Court of Criminal Appeals in Potier reviewed Supreme Court decisions and
federal circuit court cases to chronicle how erroneous rulings rise to
constitutional violations. Id. at 659−65. In United States v. Scheffer,
the Supreme Court stated that a defendant does not have a constitutional right
to present favorable evidence. 523 U.S. 303, 316 (1998).  Additionally, a trial
court can place reasonable restrictions on the evidence a defendant presents to
the jury. Potier, 68 S.W.3d at 659 (citing Scheffer, 523 U.S. at
308).  “Such rules do not abridge an accused’s right to present a defense so
long as they are not ‘arbitrary’ or ‘disproportionate’ to the purposes they are
designed to serve.” Id. at 659 (quoting Scheffer, 523 U.S. at
308).  After reviewing both Supreme Court and federal circuit court cases, the Potier
court concluded that a constitutional right to present a meaningful defense is
rarely denied by an incorrect evidentiary ruling. Id. at 663.  

The
court differentiated between the error standard set out in Rule of Appellate
Procedure 44.2(a), which discusses constitutional errors, and Rule 44.2(b),
which discusses non-constitutional errors. Id. at 658−59, 665−66.[3]  An error,
however, will only be constitutional if (1) a state evidentiary rule
categorically and arbitrarily prohibits the defendant from offering reliable or
relevant evidence that is vital to his defense, or (2) a trial court’s
erroneous ruling excludes evidence that “forms such a vital portion of the case
that exclusion effectively precludes the defendant from presenting a defense.” 
Id. at 665; see also Wiley v. State, 74 S.W.3d 399, 405−08
(Tex. Crim. App. 2002) (upholding the trial court’s decision that the danger of
unfair prejudice substantially outweighed the probative value of the
“alternative perpetrator” evidence, and did not deprive the defendant of his
right to present a defense).  The court in Potier examined the evidence
the defendant was allowed to introduce to the jury, and it affirmed the court
of appeals’s decision because the evidence was sufficient enough to present a
defense.  68 S.W.3d at 665−66 (“It may be seen that the erroneously
excluded evidence was relevant to the defense of self-defense, but that their
exclusion did not prevent the appellant from presenting a defense.  For this
reason, the error was not of constitutional dimension.”).

As
in Potier, the trial court’s ruling did not preclude Clark from
presenting his defense of suicide.  Clark introduced evidence through the
State’s witness, Mohamed Almohamed, that Sneed could have committed suicide
because the gun used to kill her had a substantial kickback.  Almohamed
testified that it was possible that Sneed was aiming the gun at her temple, but
because of the kickback, the bullet entered through the back of her head.  Clark
was also allowed to cross examine Sneed’s mother about Sneed’s mental state. 
But when questioned, Sneed’s mother testified that her daughter was neither
bipolar nor mentally ill.  Furthermore, Clark later testified that he was an
eyewitness to Sneed’s suicide.  Clark referred to Sneed’s alleged suicide
numerous times during his testimony as well as during his closing.  CPS worker Okpiabhele
testified that in August 2005, Sneed expressed feelings of depression and
suicide.  The CPS worker also testified that she had directed Sneed to get a
psychological evaluation.  Finally, Clark’s last witness, Dr. Flynn, testified
about reviewing the CPS records.  Dr. Flynn testified that Sneed had many
mental disorders and that these disorders increased her risk of suicide.  He
further stated that it was possible for a right-handed person, like Sneed, to
commit suicide with her left hand.  

Through
testimony, Clark was able to present his suicide defense.  “‘That [the
defendant] was unable to . . . present his case to the extent and in the form
he desired is not prejudicial where, as here, he was not prevented from
presenting the substance of his defense to the jury.’” Id. at 666 (quoting
United States v. Willie, 941 F.2d 1384, 1398−99 (10th Cir. 1991), cert.
denied, 502 U.S. 1106 (1992)).  Because Clark was able to present his
defense, we do not consider this a constitutional error under Rule 44.2(a);
hence, his due-process rights were not violated.[4] 
We overrule Clark’s fourth issue.  

 

 

*
* *

For
the foregoing reasons, we affirm the trial court’s judgment.         

 

 

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices Yates, Frost,
and Brown.

Publish
— Tex. R. App. P. 47.2(b).









[1]
Clark also contended that the trial court erred by not issuing a written
statement containing its findings of fact and conclusions of law about Clark’s
motion to suppress.  The trial court, however, issued findings and conclusions
on April 28, 2009, and neither Clark nor the State has contested them. 
Therefore, we are overruling the issue as moot.   





[2]
Clark claims in his appellate brief that “Sergeant Gonzales also conveyed his
belief that Mr. Clark was lying.”  While the State did ask Sergeant Gonzales
whether he perceived that Clark was lying, Clark objected to the question
before the sergeant answered, and the court sustained the objection.  Because
Clark only highlighted this portion of Sergeant Gonzales’s testimony in his
brief and the officer never had a chance to respond to the State’s question, we
do not consider Sergeant Gonzales’s testimony in our analysis.   





[3]
“If the appellate record . . . reveals constitutional error . . . the court of
appeals must reverse a judgment of conviction or punishment unless the court
determines beyond a reasonable doubt that the error did not contribute to the
conviction or punishment.” Tex. R. App. P. 44.2(a). “Any other error, defect,
irregularity, or variance that does not affect substantial rights must be
disregarded.” Tex. R. App. P. 44.2(b).





[4]
Because Clark asserts only a due-process claim we
need not decide whether the trial court’s rulings on Clark’s hearsay and Rule
403 objections were either erroneous or harmful under Rule 44.2(b).  See
Kesaria v. State, 148 S.W.3d 634, 642–43 (Tex. App.—Houston [14th Dist.]), aff’d,
189 S.W.3d 279 (Tex. Crim. App. 2006).  A harmless error analysis under Rule
44.2(b) is therefore not necessary.  See id.